UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MBALAMINWE MWIMANZI,<br><br>                      Plaintiff,<br>    v.<br><br>JOSHUA WILSON, et al.,<br><br>                      Defendants. | No. 20-cv-00079 (CRC) |

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Pursuant to Fed. R. Civ. P. 15 and 16(b), Plaintiff Mbalaminwe Mwimanzi respectfully requests leave to amend his Complaint to add a claim based on facts first disclosed in Defendant Joshua Wilson's May 4, 2021, deposition—facts that tee up a purely legal issue that can be resolved without any further discovery, and which is closely related to existing claims and important to Mr. Mwimanzi's ability to vindicate his rights. Defendants oppose this motion. Copies of the proposed amendments to the Complaint, one without redlines and one in redline, are attached to this Motion as Exhibits A and B, respectively.

The original Complaint alleges that on January 15, 2019, Defendant Wilson, a Metropolitan Police Department (MPD) officer, violated the Fourth Amendment and D.C. common law, when, while executing a warrant to search an apartment for drugs and related items, he searched Mr. Mwimanzi's person in an unreasonable manner. At deposition, Defendant Wilson, for the first time, explained that he searched—not merely frisked—Mr. Mwimanzi to look for drugs or drug paraphernalia and believed that he had authority to do so under District of Columbia law and policy simply because Mr. Mwimanzi was present in an apartment subject to a search warrant for such items. He further testified that he had no other grounds for searching Mr. Mwinanzi.

1

Based on the evidence uncovered via discovery, Mr. Mwimanzi seeks leave to amend his Complaint to add a new claim, against only Defendant District of Columbia, alleging that the search of Mr. Mwimanzi's person was not only unreasonably intrusive, but also unlawful at its inception, because it was neither authorized by the warrant nor supported by probable cause.[1] Mr. Mwimanzi diligently informed Defendants and the Court of his desire to amend promptly after receiving the new evidence. Amendment will not prejudice Defendants as no additional discovery is necessary: either the District's law and policy are constitutional or they are not. And, far from being futile, Mr. Mwimanzi's new claim is well grounded, as the D.C. Circuit has made clear that officers cannot search people based solely on their presence in a residence subject to a search warrant. Thus, denying him the opportunity to amend would deprive him of the opportunity to challenge a clear violation of his rights.

## BACKGROUND

As alleged in the original Complaint, on January 15, 2019, Metropolitan Police Department (MPD) officers entered 769 Quebec Place NW, Apartment 2 to execute a warrant permitting them "'to search at any time of the (day or night), the designated **Residence**, for the property specified,' which included '[d]rugs and/or narcotics, drug paraphernalia,' and related materials." ECF 1 (Compl.) ¶¶ 9, 10, 44 (quoting the warrant; emphasis in the warrant). The warrant did not expressly authorize the search of people found in the apartment, nor did it mention Mr. Mwimanzi by name. *Id.* ¶¶ 44–45.

Mr. Mwimanzi did not reside at that address, *see id.* ¶¶ 3, 9, but he was inside the apartment when the officers burst in. *Id.* ¶ 10. After one officer patted down Mr. Mwimanzi, and another

---

[1] Mr. Mwimanzi also seeks to make minor, unrelated factual updates to the Complaint based on changes since filing or information learned during discovery. *See* Ex. A (Proposed Am. Compl.) ¶¶ 7, 21.

officer searched him, *id.* ¶¶ 14, 18, Defendant Wilson searched Mr. Mwimanzi again, probing his buttocks and rubbing and jamming his testicles against his legs multiple times, causing severe pain. *Id.* ¶¶ 23–29. Neither Defendant Wilson, nor any other officer, found drugs, drug paraphernalia, weapons, other contraband, or evidence on Mr. Mwimanzi's person. *Id.* ¶¶ 15, 19, 33. And no drugs or drug paraphernalia were seized from the apartment. *Id.* ¶ 58.

On January 13, 2020, Mr. Mwimanzi filed this lawsuit, alleging that Defendant Wilson violated the Fourth Amendment and the D.C. common law prohibition on battery by searching him in an unreasonable manner. *Id.* ¶¶ 61–65. The Court issued its initial scheduling order on March 10, 2020, setting June 8, 2020, as the deadline for motions for leave to amend, and September 8, 2020, as the date fact discovery would close. ECF 11 at 1.

The COVID-19 pandemic prevented the parties from adhering to this schedule. On March 11, 2020, the day after the scheduling order issued, Mayor Bowser declared a public health emergency for the District of Columbia, Mayor's Order 2020-046[2]; a stay-at-home order was issued a few weeks later, Mayor's Order 2020-054.[3] The parties twice moved to extend the close of discovery due to the COVID-19 pandemic, ECF 15 at 4–5; ECF 16 at 2, and then sought two more extensions due to challenges Defendants experienced in providing records responsive to Plaintiff's requests for production, ECF 17 at 4; ECF 18 at 4. The Court granted these requests in Minute Orders issued on July 28, 2020, October 20, 2020, January 4, 2021, and March 8, 2021, which collectively pushed the deadline for discovery to May 31, 2021. Due to these delays, no discovery was exchanged until the deadline for amendment had passed, and Mr. Mwimanzi did

---

[2] https://mayor.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachments/MO.DeclarationofPublicHealthEmergency03.11.20.pdf.
[3] https://dtap.ddot.dc.gov/Document/Mayor's%20Order%202020-054%20Stay%20at%20Home%20for%20DTAP.pdf.

not receive Defendants' final supplement to their response to his July 2, 2020 production requests until May 14, 2021. Additionally, because the parties recognized the importance of exchanging paper discovery before depositions, ECF 18 (Defs.'s Consent Mot. To Extend The Remaining Scheduling Order Deadlines) at 4, these delays pushed depositions to May of this year.

Despite these obstacles, Mr. Mwimanzi diligently sought to discern the justification for Defendant Wilson's search. In interrogatories served on July 2, 2020, Plaintiff asked both the District and Defendant Wilson to "[s]tate all factual and legal grounds that Defendants believe justified Defendant Wilson's decision to *initiate* his search of Mr. Mwimanzi's 'groin area'…as well as all factual and legal arguments that Defendants believe justified the *manner* in which Defendant Wilson conducted the search of Mr. Mwimanzi's groin area." Pl.'s First Set of Interrogs, Requests for Production, and Requests for Admission. 6–7 (emphasis added). After submitting a set of objections on July 31, 2020, Defendant Wilson provided his substantive response to the interrogatory on September 11, 2021:

> Officer Wilson adopts and otherwise maintains his objections previously asserted on July 31, 2020. Without waiving the objections, I did not search Mwimanzi as described in the Complaint. Further answering, the search I conducted was justified under Metropolitan Police Department General Order 702.03 (DC Code Title 23 § 23-524).

Ex. C (Def. Joshua Wilson's Answers to Pl.'s First Set of Interrogs.) 3. On September 14, 2020, Defendant District of Columbia responded with a nearly identical answer:

> The District adopts and otherwise maintains its objections previously asserted on July 31, 2020. Without waiving the objections, the search conducted by Officer Wilson of Mr. Mwimanzi was justified under Metropolitan Police Department General Order 702.03 (DC Code Title 23 § 23-524).

Ex. D (Def. District of Columbia's Answer to Pl.'s First Set of Interrogs.) 3–4.

These answers did not specify what Officer Wilson saw, heard, or knew to justify his search. Their reference to MPD General Order 702.03[4] did not fill that gap, as that document is 23 pages long and provides guidelines for every step of the search warrant process. It instructs officers to search people incident to arrest and to frisk people for weapons. *Id.* § VII(F)(8)(b). The Order also permits members to "search any person on the premises to the extent reasonably necessary to ensure safety and/or find contraband or property enumerated in the search warrant." *Id.* § VII(F)(8)(f). Neither the District's interrogatory responses, nor those from Officer Wilson, specified which ground justified Defendant Wilson's search of Mr. Mwimanzi.

Nor did the reference to D.C. Code § 23-524 clarify the rationale for conducting the search. That statute also provides broad instructions on the execution of search warrants. Subsection (g) of that statute states that:

> An officer executing a warrant directing a search of premises or a vehicle may search any person therein (1) to the extent reasonably necessary to protect himself or others from the use of any weapon which may be concealed upon the person, or (2) to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person.

As with their reference to MPD General Order 702.03, Defendants, by mentioning the statute, did not specify whether Defendant Wilson's search of Mr. Mwimanzi was conducted to find weapons or to locate "property enumerated in the warrant."

Mr. Mwimanzi did not have an opportunity to clarify the grounds for the search until Defendant Wilson's May 4 deposition. At that deposition, when asked why he searched Mr. Mwimanzi, Defendant Wilson made clear that the basis for the search was the possibility of drugs or drug paraphernalia. Ex. E (Wilson Depo. Tr.) 39:4–11 (testifying that he searched Mr. Mwimanzi "[b]ecause he was inside the residence where there was believed to be drugs and drug

---

[4] https://go.mpdconline.com/GO/GO_702_03.pdf

paraphernalia . . . [a]nd there was a warrant signed by a judge to search or to seize any drugs in that location"). When asked if he had any information outside the warrant for the residence that led him to search Mr. Mwimanzi, Defendant Wilson replied, "No. Just the warrant." *Id.* 40: 4–7. Defendant Wilson further testified that he understood MPD General Order 702.03 as authorizing him to search Mr. Mwimanzi based exclusively on the warrant to search the apartment. *See id.* at 21: 4–25 ("702.03 . . . that's the MP [*sic*] general orders on search warrants, it states that . . . in a private residence, everybody can be searched as long as . . . what's contained in the search warrant can be contained on their body"). Thus, Defendant Wilson's deposition clarified, for the first time in this case, that the object of his search of Mr. Mwimanzi was drugs or drug paraphernalia and that the only factual basis for the search was Mr. Mwimanzi's presence in an apartment subject to a search warrant for those items. The testimony further established that he carried out this search pursuant to District policy.

Mr. Mwimanzi received a transcript of Defendant Wilson's deposition testimony on May 18, 2021. His attorneys reviewed Defendant Wilson's answers against the relevant law and, approximately two and a half weeks later, on June 4, 2021, informed opposing counsel of their intent to seek leave to amend. Mr. Mwimanzi shared this information with the Court three days later at the scheduled June 7 status hearing. Mr. Mwimanzi now files this motion in accordance with the briefing schedule entered by the Court on June 21, 2021.

## ARGUMENT

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." In this Court, unless there is "a reason 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of the allowance of the amendment, futility of amendment, etc.,' the leave should be given." *Des Longchamps v. Allstate Property & Casualty Ins. Co.*, 38 F. Supp. 3d 39, 43 (D.D.C. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Several decisions in this district have held that a motion to amend a pleading filed after a scheduling order's deadline for the amendment of pleadings must satisfy Federal Rule of Civil Procedure 16(b)'s "good cause" standard rather than the standard of Rule 15(a). *See, e.g.*, *Lovely-Coley v. District of Columbia*, 255 F. Supp. 3d 1, 5 (D.D.C. 2017). Under Rule 16(b), good cause exists where the moving party shows diligence, and the amendment will not prejudice the other side. *Id.* at 6–7. One might think that a rule specifically providing the standard for the amendment of pleadings—even as late as during trial, *see* Rule 15(b)—would govern the amendment of pleadings. However, it is not necessary to resolve here the question of which rule governs, because Plaintiff satisfies Rule 16(b) as well as Rule 15. And although this Court has at times said that good cause is the sole consideration relevant to a motion to amend reviewed under Rule 16, *see Lovely-Cole*, 255 F. Supp. 3d at 7 n.3, other courts have also considered whether the proposed amendment would be futile, *see Bowers v. Am. Heart Ass'n., Inc.*, 513 F. Supp. 2d 1364, 1368 (N.D. Ga. 2007) (collecting cases). Plaintiff therefore addresses both good cause and futility, to ensure the Court can weigh all factors it deems necessary.

**I.     There Is Good Cause To Grant Mr. Mwimanzi Leave To Amend.**

A plaintiff acts diligently by promptly seeking leave to amend the complaint based on "newly discovered evidence." *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142, 144 (D.D.C. 2013). That is precisely what occurred here. Defendants' answers to Plaintiff's

interrogatories and requests for production did not reveal the specific basis for Defendant Wilson's search or the facts he believed gave him authority to conduct the search. Mr. Mwimanzi did not learn the answers to these questions until the May 4, 2021, deposition. Within approximately one month of the deposition, and within two and a half weeks of receiving the deposition transcript on May 18, Mr. Mwimanzi analyzed Defendant Wilson's rationale, concluded it was unlawful, and informed Defendants and the Court of his intent to amend the Complaint.

Through taking these steps, Plaintiff displayed diligence. In *Ijoor v. Consummate Computer Consultants Sys., LLC*, 2017 WL 9613962, *1 (D.D.C. Sept. 8, 2017), the Court granted leave to amend under Rule 16(b) where the movant "acted diligently by filing the instant motion within a month of learning information giving rise to its reason for amendment." *See also Richardson v. Yellen*, 323 F.R.D. 444, 447 (D.D.C. 2018) (noting in dicta that "[i]f [plaintiff] could not have known material information until shortly before moving to amend his complaint, he would present a compelling argument that he had acted with diligence"). Other courts have held likewise. *See, e.g.*, *Kendrick v. Cty. of San Diego*, 2017 WL 2692903, at *4 (S.D. Cal. June 22, 2017) (granting leave under Rule 16(b) to add new defendants where plaintiff sought leave two weeks after receiving deposition transcripts that identified officers responsible for alleged tortious acts); *Clark v. Anderson Merchandisers, LLC*, 2016 WL 1715189, at *2 (S.D. W.Va. Apr. 27, 2016) (granting leave to amend under Rule 16(b) where "Plaintiff moved to amend her Complaint shortly after the relevant depositions were taken in this case, which revealed the facts giving rise to the Plaintiff's new claim.").

Granting leave to amend will not prejudice Defendants. The sole facts relevant to Mr. Mwimanzi's new claim are the justification for Defendant Wilson's search and the content of the District's policies that he contends authorized the search. Defendant Wilson's testimony

conclusively establishes the former, while the text of MPD General Order 702.03 and D.C. Code § 23-524(g) removes any dispute about the latter. Thus, no additional discovery is necessary. The only question raised by Mr. Mwimanzi's proposed claim is whether a warrant to search an apartment for drugs permits officers to search everyone found inside—a pure issue of law. This posture makes it difficult to see how Defendants could suffer prejudice if the Court grants leave to amend. *See Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 233 F. Supp. 3d 69, 82–83 (D.D.C. 2017) (holding, in case adjudicated under Rule 15(a), that amendment would not prejudice nonmoving party where "neither discovery nor experts are at issue").

By contrast, if the Court denies leave, Mr. Mwimanzi will be foreclosed from including a claim seeking redress for a clear-cut violation of his constitutional rights. Good cause supports allowing Mr. Mwimanzi to amend. *See United States v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007) (holding that trial court did not abuse its discretion by finding good cause to amend under Rule 16(b) based on "[t]he rights of the parties, the ends of justice, and judicial economy").

## II.     Mr. Mwimanzi's Proposed Amendment Would Not Be Futile.

"An amendment is futile if the proposed claim would not survive a motion to dismiss," and a "claim will not survive a motion to dismiss if it fails to plead enough facts to state a claim to relief that is plausible on its face." *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 48 (D.D.C. 2009) (internal citations omitted) (cleaned up). In applying that standard, "the facts in the proposed amendment complaint must be accepted as true, and the plaintiff must receive the benefit of all reasonable inferences." *Food & Water Watch v. United States Dep't of Agric.*, 2019 WL 2423833, at *6 (D.D.C. June 10, 2019). Mr. Mwimanzi's proposed claim survives this test.

A claim alleging that the District bears liability for its employee's constitutional torts, such as the one Mr. Mwimanzi seeks to add, requires showing, first, that a District employee committed

an unconstitutional act, and second, that a District policy was the "moving force" behind the violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. 2003) (quoting *City of Canton v. Harris*, 489 U.S. 278, 389 (1989)). In this case, the latter point is straightforward. The Amended Complaint alleges that, in searching Mr. Mwimanzi for drugs or drug paraphernalia based solely on his presence in an apartment subject to a warrant, Defendant Wilson was acting pursuant to the authority of District law and policy, specifically D.C. Code § 23-524(g) and MPD General Order 702.03§ VII(F)(8)(f). Ex. A (Proposed Am. Compl.) ¶¶ 36–40. At this stage, the Court must accept this allegation as true, and in any event, both Defendants Wilson and the District of Columbia have affirmatively acknowledged that District law and policy provided the justification for the search. *See* Ex. C (District Resp. to Pl.'s Interrog.) 3–4; Ex. D (Wilson Resp. to Pl.'s Interrog.) 3; Ex. E (Wilson Depo. Tr.) 21:7–22:8. Both the statute and the General Order provide that an "officer executing a warrant directing a search of premises . . . may search any person therein . . . to" among other things, "find the property enumerated in the warrant which may be concealed upon the person." D.C. Code § 23-524(g); *accord* MPD General Order 702.03 § VII(F)(8)(f) (adopting substantively identical rule). Thus, District policy clearly served as the "moving force" behind Defendant Wilson's decision to initiate the search, and the success of Mr. Mwimanzi's proposed claim turns on whether that justification is constitutional.

It is not. Unless a "recognized exception" applies, officers can search a person only if they possess a warrant based on probable cause that the search will yield contraband or evidence. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013). An individual's mere presence in a place subject to a search warrant does not constitute such an exception. As the Supreme Court explained in *Ybarra v. Illinois*, 444 U.S. 85, 92 n.4 (1979), "a warrant to search a place cannot normally be construed to authorize a search of each individual in that place." Instead, "[w]here the standard is

probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.* at 91; *see also United States v. Di Re*, 332 U.S. 581, 587 (1948) (holding officers lacked probable cause to search a passenger based on his "mere presence" in a car suspected of containing contraband).

*Ybarra v. Illinois* involved commercial premises. Although the Supreme Court has not specifically addressed whether a warrant to search a home confers authority to search everyone found inside, the D.C. Circuit has, and, in doing so, rejected the reasoning on which Defendant Wilson relied. The court expressly rejected the view that "the authority conferred by a warrant to search premises is coterminous with that residing in a warrant to search the person." *Walker v. United States*, 327 F. 2d 597, 600 (D.C. Cir. 1963). Likewise, in *United States v. Branch,* 545 F.2d 177, 182 (D.C. Cir. 1976), the court held that officers violated the Fourth Amendment by searching a man's bag after he carried it into an apartment while the police were executing a warrant to search the apartment for drugs. The court endorsed "[t]he concept that a premises search warrant does not embrace personal searches," even if that principle "presented some difficulty in application" (specifically when officers rely on a premises warrant to search bags, purses, or other containers belonging to visitors—a situation not at issue here). *Id.* at 181; *see also id.* (observing that the government "*recogniz[ed]* that . . . a warrant [to search an apartment] did not authorize the search of all persons who may have been present" (emphasis added)).

Most recently, the court upheld a frisk—not a search—of a man leaving an apartment that was about to be searched for drugs pursuant to a warrant, but stated that the legality of the frisk was a "particularly close call" that sat at "the bounds of *Terry v. Ohio*."[5] *United States v. Reid*, 997

---

[5] In *Terry*, 392 U.S. 1 (1968), the Supreme Court held that an officer can conduct a protective pat-down (often called a frisk) for weapons based on reasonable suspicion that a person is involved in crime and may be armed. *See id.* at 20, 27. Reasonable suspicion is a lower standard than probable

F.2d 1576, 1577, 1579, 1580 (D.C. Cir. 1993). In doing so, the Court rejected the argument that police "executing a narcotics warrant" can "search everyone on the premises for weapons," (*i.e.* conduct a frisk) and explained that "were it not for the specific testimony of [the officer who conducted the frisk] that he felt endangered by [the defendant's] potential presence behind the police officers as they were seeking to execute the search warrant, the government could not prevail." *Id.* at 1579. If a warrant to search a residence doesn't authorize frisks of everyone in a residence, it certainly can't authorize searches.

Other courts agree with the D.C. Circuit on this point. For example, after *Ybarra*, the D.C. Court of Appeals questioned the constitutionality of D.C. Code § 23-524(g), and rather than rely on that statute to uphold the search of a man based on his presence in a residence subject to a warrant, the court remanded so the trial court could assess if facts other than the man's location established probable cause. *White v. United States*, 512 A.2d 283, 286, 287 (D.C. 1986); *see also id.* (observing that defendant's presence in residence "did not give the police probable cause to believe that [he] . . . was committing a crime or concealing property which they were entitled to seize"). Several federal appellate courts have issued similar decisions. *See, e.g.*, *Doe v. Groody*, 361 F.3d 232, 243 (3d Cir. 2004) (holding that "[a] search warrant for a premises does not constitute a license to search everyone inside"); *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir. 1991) ("[T]here must be probable cause, or at least some degree of particularized suspicion, to justify further searches or seizures of individuals who are neither named in the warrant nor arrested as a consequence of the search."); *United States v. Ward*, 682 F.2d 876, 880 (10th Cir.

---

cause. *See id.* As alleged in the Proposed Amended Complaint, and confirmed by Defendant Wilson's deposition testimony, Defendant Wilson did not frisk Mr. Mwimanzi for weapons; he searched him for drugs or drug paraphernalia. Ex. A (Proposed Am. Compl.) ¶ 36; Ex. E (Wilson Depo. Tr.) 39:4–11.

12

1982) (holding that a warrant to search a residence for gambling materials did not justify even a pat-down frisk of the owner-occupant).

In sum, the sole basis for Defendant Wilson's search was the District of Columbia's statute and policy, which authorized unconstitutional searches. Thus, Mr. Mwimanzi's proposed amendment, adding a claim challenging those policies, would not be futile.

## CONCLUSION

Mr. Mwimanzi's motion for leave to amend his complaint should be granted.

Date: July 1, 2021                                          Respectfully submitted,

*/s/ Michael Perloff*
Michael Perloff (D.C. Bar No. 1601047)
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
    of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
mperloff@acludc.org

*Counsel for Plaintiff[*]*

---

[*] Counsel wish to acknowledge the assistance of recent law school graduate Anna Burke and paralegal Elaine Stamp in the preparation of this motion.