# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MBALAMINWE MWIMANZI,<br>437 Newton Place NW<br>Washington, D.C. 20010,<br><br>                    Plaintiff,<br><br>    v.<br><br>OFFICER JOSHUA WILSON<br>c/o Office of the Attorney General<br>441 4th Street NW<br>Washington, D.C. 20001,<br><br>DISTRICT OF COLUMBIA<br>c/o Office of the Attorney General<br>441 4th Street NW<br>Washington, D.C. 20001,<br>                    Defendants. | No. 20-cv-00079 (CRC)<br><br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT FOR DAMAGES**
(Fourth Amendment Unreasonable Search; Battery)

**INTRODUCTION**

In this civil rights action, Mbalaminwe Mwimanzi asserts his right not to be searched without probable cause or to endure baseless probes of his genitals and anus by government agents. Mr. Mwimanzi suffered that type of search on January 15, 2019, when numerous officers with the District's Metropolitan Police Department (MPD) stormed into an apartment that Mr. Mwimanzi was visiting. The officers entered pursuant to a warrant permitting them to search the apartment, although not its occupants, for drugs, drug paraphernalia, and related materials. Mr. Mwimanzi was searched three times. The third search was conducted by Defendant Wilson, who pressed his hand into Mr. Mwimanzi's buttocks through his jeans hard enough to cause severe pain. Defendant Wilson proceeded to jam Mr. Mwimanzi's testicles against his leg, rubbing and pressing on them

1

multiple times. Defendant Wilson had no reason to expect that he would find contraband or weapons through this search, and indeed, he found none. After executing the warrant, the officers left the apartment without seizing any items.

To Mr. Mwimanzi, the search was akin to a sexual assault and has affected him physically, socially, professionally, and emotionally. He files this lawsuit to vindicate his right to be free from unreasonable searches.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because Mr. Mwimanzi asserts ~~a~~ claims under the Fourth Amendment to the United States Constitution. His claim under the common law of the District of Columbia arises from the same events as his constitutional claims and therefore falls within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Mr. Mwimanzi's claims occurred in the District of Columbia.

## PARTIES

3. Plaintiff Mbalaminwe Mwimanzi is an adult resident of the District of Columbia who lives at 437 Newton Place NW, Washington, D.C. 20010.

4. Defendant Joshua Wilson (Badge Number 4985) is a sworn member of the Metropolitan Police Department. At the time of the events at issue, he was acting within the scope of his employment and under color of law of the District of Columbia. He is sued in his individual capacity.

5. Defendant District of Columbia is a municipal corporation, the local government of Washington, D.C., and operates and governs the MPD pursuant to the laws of the District of

Columbia. In this case, the District of Columbia acted through its agents, employees, and servants, including Defendant Wilson.

**FACTS**

6. Mbalaminwe Mwimanzi immigrated to the United States from Tanzania when he was eight years old, and now is a permanent United States resident.

7. At the time of the incident, Hhe currently workeds as a bricklayer's apprentice while attending a vocational training program to advance in his trade.

8. Mr. Mwimanzi has resided in the D.C. area since he moved to the United States and, during that time, became friends with Ms. Margie Whitehead.

9. On the evening of January 15, 2019, Mr. Mwimanzi and several other friends met at Ms. Whitehead's home, which is located at 769 Quebec Place NW, Apartment 2, Washington, D.C. 20010.

10. Mr. Mwimanzi and his friends were watching sports on television when, at approximately 9:00 pm, a team of MPD officers broke down the apartment's door and ordered everyone to get on the ground.

11. Mr. Mwimanzi, Ms. Whitehead, and the other occupants lowered themselves to the floor.

12. An officer pulled Mr. Mwimanzi to his feet and, with Mr. Mwimanzi's arms behind his back, placed handcuffs around his wrists.

13. As he rose, Mr. Mwimanzi noticed officers handcuffing and searching the other occupants.

14. Once Mr. Mwimanzi was on his feet, officers proceeded to pat him down.

15. They did not find any drugs, contraband, or evidence of a crime.

16. After the search ended, Officer Terence Sutton Jr. called Mr. Mwimanzi toward him. As Mr. Mwimanzi approached, Officer Sutton yanked Mr. Mwimanzi closer to him, pulling him by his shirt.

17. When Mr. Mwmianzi protested, Officer Sutton said that Mr. Mwimanzi had a "bad attitude" and told him that "you don't run shit in here."

18. Officer Sutton referred Mr. Mwimanzi to another officer who searched him again, more intrusively, patting down his body and unzipping his jacket.

19. The officer did not find any weapons, contraband, or evidence of a crime.

20. A few moments after Mr. Mwimanzi's second search had ended, and Mr. Mwimanzi had sat down, Defendant Wilson walked toward him and told him to stand up.

21. Defendant Wilson asked another officer, "Has he been searched?" The officer answered, "Seijo search~~Yes, sir~~."

22. Despite this answer, Defendant Wilson ordered Mr. Mwimanzi to spread his legs.

23. Mr. Mwimanzi spread his legs about the same distance he had spread them during the prior searches. Defendant Wilson told him to spread them wider.

24. When Mr. Mwimanzi complied, Defendant Wilson placed his hands on Mr. Mwimanzi's backside and pressed them between Mr. Mwimanzi's buttocks through his pants.

25. Mr. Mwimanzi felt pressure between his buttocks and felt severe pain in his anus.

26. Defendant Wilson reached his hands between Mr. Mwimanzi's legs.

27. Defendant Wilson jammed Mr. Mwimanzi's testicles against his leg, rubbing his hand against them and putting pressure on them.

28. Mr. Mwimanzi shouted, "You're fondling me."

29. Defendant Wilson jammed, rubbed, and pressed hard on Mr. Mwimanzi's testicles multiple times.

30. As Defendant Wilson probed, Mr. Mwimanzi repeatedly cried out in shock and anguish.

31. After completing his search, Defendant Wilson looked at Mr. Mwimanzi with an expression of satisfaction, as if he felt pleased about the manner in which he had conducted the search.

32. Mr. Mwimanzi's hands remained handcuffed behind his back for the entirety of the search.

33. Defendant Wilson's search did not uncover any contraband, weapons, or evidence of a crime.

34. Mr. Mwimanzi did not have any contraband, weapons, or evidence of a crime on his person at any point on January 15, 2019.

35. Defendant Wilson's search caused Mr. Mwimanzi to feel severe pain in his anus, testicles, and lower abdomen.

36. Defendant Wilson searched Mr. Mwimanzi to determine whether he had drugs and/or drug paraphernalia on his person.

37. The only justification Defendant Wilson had for searching Mr. Mwimanzi was that Mr. Mwimanzi was present in Ms. Whitehead's apartment when officers were executing a warrant permitting them to search that apartment.

38. Defendant Wilson acted pursuant to MPD General Order 702.03 and D.C. Code § 23-524(g) authorized him to search any person located on private property subject to a search warrant for drugs.

39. MPD General Order 702.03 provides in relevant part: "Members may search any person on the premises to the extent reasonably necessary to ensure safety and/or find contraband or property enumerated in the search warrant." *Id.* § VII(F)(8)(f).

36.40. D.C. Code § 23-524(g) provides "An officer executing a warrant directing a search of premises or a vehicle may search any person therein . . . to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person."

37.41. After the search, Mr. Mwimanzi told other officers on the scene that he wanted to go to the hospital.

38.42. He explained multiple times that he needed treatment because Defendant Wilson "sexually assaulted me."

39.43. Mr. Mwimanzi did not make similar complaints after the first two searches he experienced, which were not characterized by the same degree of intrusiveness and violence.

40.44. Eventually, the officers called an ambulance for Mr. Mwimanzi.

41.45. The ambulance took him to MedStar Washington Hospital Center.

42.46. At the hospital, Mr. Mwimanzi recounted the search to a doctor and received treatment.

43.47. Defendant Wilson did not have a warrant permitting him to search Mr. Mwimanzi, let alone probe his buttocks or testicles.

44.48. MPD Officer Hyder had obtained a warrant to search Ms. Whitehead's apartment before he and his colleagues entered her apartment on January 15, 2019.

45.49. But that warrant only allowed MPD "to search at any time of the (**day or night**), the designated **Residence**, for the property specified," which included "[d]rugs and/or narcotics, drug paraphernalia," and related materials (emphasis in original).

46.50. Neither the warrant nor the attached affidavit identified Mr. Mwimanzi by name or physical description.

6

47.51. At the time he searched Mr. Mwimanzi, Defendant Wilson did not have probable cause or reasonable suspicion to believe that Mr. Mwimanzi possessed evidence, contraband, or a weapon.

48.52. At the time he searched Mr. Mwimanzi, Defendant Wilson knew that Mr. Mwimanzi had been searched previously.

49.53. Those prior searches did not reveal any evidence, contraband, or weapons.

50.54. When Defendant Wilson searched him, Mr. Mwimanzi was not standing near any evidence, contraband, or weapons.

51.55. Defendant Wilson did not ask Mr. Mwimanzi for his consent before searching him.

52.56. Mr. Mwimanzi did not agree to allow Defendant Wilson to search him.

53.57. Mr. Mwimanzi had not been placed under arrest at the time of Defendant Wilson's search.

54.58. Mr. Mwimanzi continued to experience pain in his testicles for at least two months after the search occurred.

55.59. Mr. Mwimanzi continues to feel upset when he thinks about the search and experiences anxiety when he hears police sirens. For example, at work, when he hears a police siren, he often loses focus on his responsibilities.

56.60. Several of Mr. Mwimanzi's friends were present when Defendant Wilson conducted his search.

57.61. They heard Mr. Mwimanzi cry out in pain and have subsequently joked about the incident, saying things like Mr. Mwimanzi "gasped like a little bitch" when Defendant Wilson probed his groin.

58.62. Those comments have strained Mr. Mwimanzi's relationships with his friends.

59.63. On January 16, 2019, MPD officers filed with the D.C. Superior Court a copy of the "return" for the warrant that permitted them to search Ms. Whitehead's home. There, the officers reported that "nothing [was] seized."

60.64. On March 13, 2019, a letter was delivered to the D.C. Office of Risk Management that described Defendant Wilson's search of Mr. Mwimanzi, stating where and when the search occurred, and recounting the injuries it caused Mr. Mwimanzi to experience. The letter satisfied Mr. Mwimanzi's obligations under D.C. Code § 12-309.

61.65. On March 15, 2019, Mr. Mwimanzi received an email from Robert Carter with the D.C. Office of Risk Management's Tort Liability Division. The email acknowledged receipt of the letter and assigned Mr. Mwimanzi claim number GL-19-01128.

## CLAIMS FOR RELIEF

### Claim I: Violation of Fourth Amendment Rights / 42 U.S.C. § 1983
### (District of Columbia)

66.  The Fourth Amendment to the United States Constitution prohibits unreasonable searches.

67.  The District of Columbia is liable for unreasonable searches conducted by its employees when an official policy is the moving force behind the unreasonable search.

68.  The only basis for Defendant Wilson's search of Mr. Mwimanzi was that Mr. Mwimanzi was present at Ms. Whitehead's residence when her residence was being searched pursuant to a search warrant. Defendant Wilson did not have, probable cause to search Mr. Mwimanzi.

69.  A warrant to search a private residence for drugs and drug paraphernalia does not provide a lawful basis to search all individuals found inside the residence.

70.  The District of Columbia is liable for Defendant Wilson's violation of Mr. Mwimanzi's Fourth Amendment rights because its official policies, namely D.C. Code § 23-524(g) and

8

MPD General Order 702.03, purported to authorize Defendant Wilson's search, thereby serving as the moving force behind the violation.

### Claim II: Violation of Fourth Amendment Rights / 42 U.S.C. § 1983
### (Defendant Wilson)

62.71. The Fourth Amendment to the United States Constitution protects Mr. Mwimanzi's right to be free from unreasonable searches by government officers.

63.72. Defendant Wilson violated this right when, under color of law, he repeatedly molested Mr. Mwimanzi's testicles and pressed between his buttocks hard enough to cause pain, all in front of other people and without lawful justification.

### Claim III: Battery
### (Defendants Wilson & District of Columbia)

64.73. District of Columbia law proscribes battery, defined as an intentional act that causes a harmful or offensive bodily contact.

65.74. Defendant Wilson violated Mr. Mwimanzi's right not to endure such treatment when he intentionally molested Mr. Mwimanzi's testicles and pressed between his buttocks hard enough to cause pain, all without justification.

66.75. The District of Columbia is liable under the doctrine of *respondeat superior* for the damages inflicted upon Mr. Mwimanzi by the battery committed by its agent, Officer Wilson, while acting within the scope of his employment as an MPD officer and on behalf of and in the interests of his employer.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Mwimanzi requests that this Court:

(a) RULE that the actions of Defendant Wilson violated Mr. Mwimanzi's rights under the United States Constitution and the laws of the District of Columbia;

(b) RULE that D.C. Code § 23-524(g) and MPD General Order 702.03 § VII(F)(8)(f) are unconstitutional to the extent that they authorize officers to search people based solely on their presence inside a residence when officers are executing a warrant to search the residence;

~~(b)~~(c)   RULE that the District of Columbia is liable to Mr. Mwimanzi under 42 U.S.C. § 1983 and the doctrine of *respondeat superior*;

~~(c)~~(d)   ENTER JUDGMENT awarding Mr. Mwimanzi compensatory damages against all defendants in an amount appropriate to the evidence adduced at trial;

~~(d)~~(e)   ENTER JUDGMENT awarding Mr. Mwimanzi punitive damages against Defendant Wilson in an amount appropriate to the evidence adduced at trial;

~~(e)~~(f)   ENTER JUDGMENT awarding Mr. Mwimanzi his costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. § 1988; and

~~(f)~~(g)   GRANT Mr. Mwimanzi such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

                              Respectfully submitted,

                              */s/ Michael Perloff*~~*Scott Michelman*~~
                              ~~Scott Michelman (D.C. Bar No. 1006945)~~
                              Michael Perloff (D.C. Bar No. 1601047)
                              Arthur B. Spitzer (D.C. Bar No. 235960)
                              Scott Michelman (D.C. Bar No. 1006945)
                              American Civil Liberties Union Foundation
                                 of the District of Columbia
                              915 15th Street NW, Second Floor
                              Washington, D.C. 20005
                              (202) 457-0800
                              mperloff@acludc.org ~~smichelman@acludc.org~~

~~January 13, 2020~~July 1, 2021                  _____         _____Counsel for Plaintiff

11