## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MBALAMINWE MWIMANZI,

*Plaintiff*,

v.

JOSHUA WILSON, *et al.*,

*Defendants*.

20-cv-00079 (CRC)

## DEFENDANTS OFFICER JOSHUA WILSON AND THE DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Defendants Officer Joshua Wilson and the District of Columbia (the District) move this Court, under Fed. R. Civ. P. 56, for summary judgment on all claims raised in the Complaint. Because Officer Wilson is entitled to qualified immunity and a privilege for the search he conducted on Plaintiff Mbalaminwe Mwimanzi, judgment should be entered in favor of these Defendants.

A memorandum of points and authorities in support of this motion and proposed order are attached hereto.

Date: August 6, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

*/s/Kerslyn D. Featherstone*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
STEPHANIE M. CORCORAN
D.C. Bar No. 1510874
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
(202) 724-6600; (202) 615-3910 (direct)
(202) 759-0825; (202) 741-0595 (fax)
kerslyn.featherstone@dc.gov;
stephanie.corcoran@dc.gov

*Counsel for Defendants Officer Joshua Wilson and the District of Columbia*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MBALAMINWE MWIMANZI,

        *Plaintiff*,

    v.

JOSHUA WILSON, *et al*.,

        *Defendants*.

20-cv-00079 (CRC)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS OFFICER JOSHUA WILSON AND THE DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Defendants Officer Joshua Wilson and the District of Columbia (the District) submit this memorandum of points and authorities in support of their motion for summary judgment.

## INTRODUCTION

This case centers on Officer Wilson's search of Plaintiff Mbalaminwe Mwimanzi (Mwimanzi) for contraband identified in the search warrant. Under the circumstances of the search and his good faith belief that his actions were lawful, Officer Wilson is entitled to qualified immunity and a qualified privilege for searching Mwimanzi. For these reasons, judgment should be entered in favor of Defendants.

## FACTS

On January 15, 2019, Officer C. Hyder with the Metropolitan Police Department filed an affidavit in support of an application for a search warrant (the Affidavit) with the Superior Court of the District of Columbia. Statement of Undisputed Material Fact (SUMF) ¶ 1. The Affidavit shows months leading up to his application for the search warrant, Officer Hyder had

investigated a series of drug complaints from citizens about 769 Quebec Place, NW, Apartment 2 (the Apartment).  SUMF ¶ 2.  Officer Hyder received information from a Confidential Informant about "multiple drug users and drug dealers [ ] entering [the Apartment]…."  SUMF ¶ 3.  Margie Whitehead was identified as the lease holder who "allowed other individuals to use her apartment."  SUMF ¶ 4. The Confidential Informant reported "that on a daily basis there ha[d] been heavy foot traffic going to and from [the] Apartment…, the front lobby of the apartment building, and the rear alley of the building."  SUMF ¶ 5.  Officer Hyder also observed "heavy foot traffic entering and existing the building."  SUMF ¶ 6.  Based on the affidavit, a Superior Court of the District of Colombia Judge found probable cause to grant the search warrant (Search Warrant) to search the Apartment for drugs and/or narcotics, drug paraphernalia, scales, packaging and processing materials, safes, containers both locked and unlocked, cash, computers, records, tally sheets, books, receipts, notes, ledgers, bank records, telephone bills, money orders, and other papers documenting the importation, purchase, processing and manufacturing, ordering, sale, and distribution of any illicit drugs, as well as proof of residency. SUMF ¶ 7.

On January 15, 2019, before the execution of the Search Warrant, Officer Wilson received a copy of it but not the Affidavit; he attended a briefing to discuss the search warrant and the background.  SUMF ¶ 8.  Briefings occur before every search warrant is executed.  *Id.* Given the briefing, Officer Wilson had knowledge about the contents of the Affidavit.  SUMF ¶ 9.  At deposition, Officer Wilson testified that he learned "multiple individuals were going in and out of the apartment, going in and out of the apartment buying and selling drugs -- believed to be buying and selling drugs.  *Id.*  The Search Warrant was executed by MPD police on January 15, 2019.  SUMF ¶ 10.  Officer Joshua Wilson entered the Apartment after the other officers and

4

searched Mwimanzi for drugs and drug paraphernalia as identified on the Search Warrant.
SUMF ¶ 11.  Officer Wilson's search of Mwimanzi was captured on Officer Wilson's Body
Worn Camera (BWC).  SUMF ¶ 12.

At deposition, Mwimanzi testified that he told Officer Wilson, "Stop, you know,
molesting me.  Stop fingering me dude."  SUMF ¶ 13.  Mwimanzi also testified that he flinched
as soon as he spread his legs when Officer Wilson instructed him to do so; and gasped because
Officer Wilson struck him on his testicles.  But these events are not captured on the BWC
footage.  SUMF ¶¶ 14, 15.  Officer Wilson testified that if he knew Mwimanzi had been
searched, he would not have searched him.  SUMF ¶ 16.  He believed that a pat down and frisk
occurred, but not that a search had been conducted of Mwimanzi for contraband.  SUMF ¶ 17.
Officer Wilson began his search of Mwimanzi in his groin area because "in [his] experience,
that's where a lot of drug dealers and users hide things."  SUMF ¶ 18.  Officer Wilson believed
the search was appropriate because what was contained in the search warrant could be secreted
on Mwimanzi's body.   SUMF ¶ 19.  And Officer Wilson believed his conduct was lawful based
on MPD General Order 702.03.  SUMF ¶ 20.  Discovery is closed.  *See* Ct. Dkt.  Mwimanzi did
not retain a police practice expert.  SUMF ¶ 21.  On July 1, 2021, Mwimanzi moved for leave to
amend the complaint to only add a constitutional claim against the District for the search
conducted by Officer Wilson.  Mot. for Leave to Amend [24].  According to Mwimanzi, this new
claim is "purely legal" and "can be resolved without any further discovery, and which is closely
related to existing claims and important to Mr. Mwimanzi's ability to vindicate his rights."  *Id.* at
1.  Defendants now move for summary judgment on all claims raised in the Complaint [1].

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is material if it could alter the outcome of the suit under the substantive governing law." *Slack v. Washington Metropolitan Area Transit Auth*., 353 F. Supp. 3d 1, 6 (D.D.C. 2019) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be 'genuine,' meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant." *Diaz v. Washington Metropolitan Area Transit Auth*., 243 F. Supp. 3d 86, 88 (D.D.C. 2017) (quoting *Anderson*, 477 U.S. at 248).

Conclusory allegations with no basis in the record will not allow the non-movant to escape summary judgment. *Id.* (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. United States Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 89 (quoting *Anderson*, 477 U.S. at 249-50). "[A]complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

**I.**   **The Search Performed by Officer Wilson Was Reasonable and He Is Entitled to Qualified Immunity Under the Fourth Amendment For Searching Mwimanzi.**

The Fourth Amendment ensures that "the right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches* and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See* U.S. Const. Amend. IV, emphasis added. *See also Davis v. United States,* 564 U.S. 229, 231 (2011)

(Fourth Amendment protects against the right to be free from unreasonable searches and seizures).  Determining whether a search is reasonable or unreasonable turns on the totality of facts, circumstances and atmosphere surrounding the search.  *See Chimel v. California,* 395 U.S. 752, 765 (1969); *United States v. Rabinowitz*, 339 U.S. 56, 66 (1950).

Here, even *before* the execution of the Search Warrant, Officer Wilson attended a briefing to discuss the search warrant; briefings are held before executing every search warrant. SUMF ¶ 8.  As part of the background for the issuance of the Search Warrant, Officer Wilson would have learned that a Confidential Information reported "that on a daily basis there ha[d] been heavy foot traffic going to and from [the] Apartment…, the front lobby of the apartment building, and the rear alley of the building" as that information was contained in the Affidavit in support of the warrant.  SUMF  ¶ 5.  And learned that Officer Hyder also observed "heavy foot traffic entering and existing the building."  SUMF ¶ 6.  Officer Wilson would have learned that Margie Whitehead was identified as the lease holder who "allowed other individuals to use her apartment."  SUMF ¶ 4.  And "that on a daily basis there ha[d] been heavy foot traffic going to and from [the] Apartment…, the front lobby of the apartment building, and the rear alley of the building."  SUMF  ¶¶ 3, 5.  Indeed, at deposition, Officer Wilson testified he understood that " multiple individuals were going in and out of the apartment, going in and out of the apartment buying and selling drugs -- believed to be buying and selling drugs."  SUMF  ¶ 9.  So when Officer Wilson began searching Mwimanzi, who was present in the Apartment when the Search Warrant was executed, he began the search of his groin area as is captured on his BWC footage. SUMF  ¶¶ 12, 18.  As explained by Officer Wilson, in his experience, a lot of drug dealers and users hide drugs in the groin area.  SUMF ¶ 18.

In describing the search, Mwimanzi claims that Officer Wilson molested him.  SUMF ¶ 13.  He testified that he told Officer Wilson, "Stop, you know, molesting me.  Stop fingering me dude."  *Id.*  Mwimanzi also testified that he flinched as soon as he spread his legs when Officer Wilson instructed him to do so; and gasped because Officer Wilson struck him on his testicles.  SUMF ¶¶ 14, 15.  But the BWC footage does not capture Mwimanzi telling Officer Wilson to stop nor show him flinch or gasp.  SUMF ¶ 12.  And Mwimanzi's argument that Officer Wilson knew he had already been searched does not negate Officer Wilson's good faith belief that he had not been searched for contraband.  As Officer Wilson testified, if he knew Mwimanzi had been searched, he would not have searched him.  SUMF ¶ 16.  Officer Wilson believed that Officer Seijo's role was not to conduct searches; a pat down and frisk may have occurred.  SUMF ¶ 17.  And while the search may have been uncomfortable for Mwimanzi and, in his opinion, intrusive, his descriptions of the search reveal no more activity than what was necessary to search his groin area for drugs; for those drugs as identified in the Search Warrant.  SUMF ¶ 7.  Indeed, Officer Wilson's BWC shows that his search was limited to areas where he could have found the items identified in the Search Warrant.  SUMF ¶¶ 12, 18.  *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 388–89, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009) ("search[es] must be limited to the areas where the object of that infraction could be concealed.") (citing *Horton v. California*, 496 U.S. 128, 141, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ("Police with a warrant for a rifle may search only places where rifles might be.")).  Given Mwimanzi's failure to retain a police practices expert in this case, a jury would be left to speculate as to whether the search as conducted by Officer Wilson complied with police practices for searching for contraband.  *See* SUMF ¶ 21.  A jury should never be allowed to guess about a material element of a plaintiff's claim.  *See Lasley v. Georgetown Univ.*, 688 A.2d

1381, 1385 (D.C. 1997) ("the purpose of expert testimony is to avoid jury findings based on mere speculation or conjecture") (quoting *Washington v. Washington Hosp. Ctr.*, 579 A.2d 177, 181 (D.C. 1990).  Based on this record, no reasonable jury could find that the search as shown on the BWC footage was unreasonable given the totality of facts and circumstances leading to the search.

And even if this Court determines that the search was not reasonable, Officer Wilson is entitled to qualified immunity because he believed in good faith that the search he conducted on Mwimanzi was lawful.  It is well settled that police officers enjoy a qualified immunity from constitutional and statutory claims against them.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36, 48 (D.C. Cir. 2002).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Courts have "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) *(per curiam)*.  Indeed, qualified immunity balances two important interests:  1) the need to shield the police from harassment, distraction, and liability when they perform their duties reasonably, and 2) the need to hold them accountable when they purportedly exercise their powers irresponsibly.  *Pearson*, 555 U.S. at 231.  As explained in *Anderson v. Creighton*, 483 U.S. 635, 638 (1987):

> Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.  Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.

The trial court must consider two factors in analyzing the merits of a qualified immunity defense. *Pearson*, 555 U.S. at 231-32. A determination must be made as to whether a plaintiff has proved facts that show deprivation of a constitutional right. *Id*. at 232. The Court should also decide whether the constitutional right at issue was clearly established at the time of the officer's alleged conduct. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008) (noting that although reasonableness might be a factor in both steps, the second step focuses solely on whether it was reasonable for the government official not to know their conduct was unlawful). To be sure, the process of determining qualified immunity is fact intensive and must take into account the specific context of the case, such as status of the government official in question and the particular factual and legal claims against him or her, and the contours of the right should be clear such that a reasonable official would know that what he is doing was violating that right. *Saucier*, 534 U.S. at 201-02.

As Officer Wilson explained during deposition, he believed MPD General Order 702.03 on search warrants supported the search. SUMF ¶ 20. And under D.C. Code § 23-524(g), "[a]n officer executing a warrant directing a search of premises … may search any person therein … (2) to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person." Officer Wilson had no reason to believe that searching Mwimanzi was unlawful as he only searched as was reasonably necessary to find the property enumerated in the Search Warrant. Thus, Officer Wilson is entitled to qualified immunity. And even if

mistaken about the appropriateness of the search, Officer Wilson is still entitled to qualified

innunity.  *Pearson*, 555 U.S. at 235-236.


II.      **Mwimanzi's Battery Claim Fails.**

A battery is an intentional act that causes a harmful or offensive bodily contact.  *Evans-

Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007); *Hundley v. District of Columbia*,

494 F.3d 1097, 1101 (D.C. Cir. 2007) (citing *District of Columbia v. Jackson*, 810 A.2d 388, 392

(D.C. 2002)).  Under the laws of the District of Columbia, police may search any person inside a

residence "…to the extent reasonably necessary to find property enumerated in the warrant

which may be concealed upon the person."  *See* § 23-564(g).  Thus, the relevant inquiry here in

determining whether Officer Wilson is liable for battery is whether his conduct was excessive

and therefore not privileged.  *See District of Columbia v. Chinn,* 839 A.2d 701, 706 (D.C. 2003),

(quoting *Etheredge v. District of Columbia,* 635 A.2d 908, 916 (D.C.1993)) (The reasonableness

of a particular act of force must be judged from the perspective of a reasonable officer on the

scene, rather than with the 20–20 vision of hindsight).  And "[u]nder the rule of

the RESTATEMENT (SECOND) OF TORTS § 133 (1965), liability is imposed *only* for the

harm done by the use of such force as was excessive, unless the harm cannot be differentiated."

*Chinn*, 839 A.2d at 705, emphasis added.

The evidence in this record shows that Officer Wilson searched Mwimanzi's groin area

for drugs, drug paraphernalia and other items identified in the Search Warrant that could be

secreted on his person.  SUMF ¶¶ 7, 18, 19.  And although Mwimanzi claims that Officer Wilson

molested him and that he told him to "Stop, you know, molesting me.  Stop fingering me dude",

he has not shown that the search conducted by Officer Wilson was *excessive* or otherwise

inappropriate by police standards.  SUMF ¶ 13.  Indeed, the BWC footage shows that it was not.

SUMF ¶ 12.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (When opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of facts for purposes of ruling on a motion

for summary judgment).  Moreover, because  Mwimanzi did not identify any police practice

expert to describe the method used to search for contraband, and without this key testimony, the

jury will be left to guess whether the method used by Officer Wilson to search Mwimanzi's groin

area was performed within or outside the parameters of a search for drugs or was otherwise

excessive.  *See* Fed. R. Evid. 702 (Testimony from expert allowed if "the expert's scientific,

technical, or other specialized knowledge will help the trier of fact to understand the evidence or

to determine a fact in issue").  Given Officer Wilson searched Mwimanzi consistent with the

requirements in the Search Warrant for contents contained therein, he is entitled to a privilege

against Mwimanzi's battery claim.  For these reasons, Mwimanzi's battery claim fails against

these Defendants.

## CONCLUSION

For all the reasons set forth above, the Court should grant judgment in favor of

Defendants.

Date:  August 6, 2021                    Respectfully submitted,

                                         KARL A. RACINE
                                         Attorney General for the District of Columbia

                                         CHAD COPELAND
                                         Deputy Attorney General
                                         Civil Litigation Division


                                         */s/ Patricia A. Oxendine*
                                         PATRICIA A. OXENDINE
                                         D.C. Bar No. 428132

Chief, Civil Litigation Division, Section I

*/s/ Kerslyn D. Featherstone*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 47858
Senior Assistant Attorney General
STEPHANIE M. CORCORAN
D.C. Bar No. 1510874
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
(202) 724-6600; (202) 615-3910 (direct)
(202) 759-0825; (202) 741-0595 (fax)
kerslyn.featherstone@dc.gov;
stephanie.corcoran@dc.gov

*Counsel for Defendants Officer Joshua Wilson and
the District of Columbia*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MBALAMINWE MWIMANZI,

                    *Plaintiff*,

        v.                                          20-cv-00079 (CRC)

JOSHUA WILSON, *et al.*,

                    *Defendants*.

## **ORDER**

Upon consideration of Defendants Officer Joshua Wilson and the District of Columbia's

Motion for Summary Judgment, Plaintiff Mbalaminwe Mwimanzi's opposition, the Reply, and

the entire record, it is by this _____ day of _____ 2021,

ORDERED:  that Defendants' Motion is GRANTED for the reasons set forth in their

motion; and it is,

FURTHER ORDERED:  that judgment is entered in favor of all Defendants on all

claims.


                                            _____
                                            JUDGE CHRISTOPHER R. COOPER
                                            U.S. District Court for the District of Columbia