## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MBALAMINWE MWIMANZI,

*Plaintiff*,

v.

JOSHUA WILSON, *et al*.,

*Defendants*.

20-cv-00079 (CRC)

## DEFENDANTS OFFICER JOSHUA WILSON AND THE DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S RESPONSES TO THEIR STATEMENT OF MATERIAL UNDISPUTED FACTS

Defendants Officer Joshua Wilson and the District of Columbia (the District) submit this reply to Plaintiff Mbalaminwe Mwimanzi's disputed responses to its statement of undisputed facts (SUMF) Nos. 12, 17, 18, 19, and 20.

**Defendants' SUMF No. 12**

12.     Officer Wilson's search of Mwimanzi was captured on Officer Wilson's Body Worn Camera (BWC). Ex. D from 02:19:32Z to 02:19:39Z.

**Mwimanzi's Response**

Plaintiff disputes that the search lasts from 2:19:32Z to 2:19:39Z as it actually lasted until 2:20:39Z. *See* Defs.' Ex. D. Otherwise, Plaintiff does not contest this assertion on the understanding that, in stating that the BWC "captured" the search, paragraph 12 does not make averments about the comprehensiveness of the recording in terms of its ability to provide a clear, visual depiction of the crucial aspects of the encounter.

**Defendants' Reply**

Mwimanzi does not contest the substance of SUMF No. 12 but rather whether the length of the search extended beyond Ex. D.  Yes, the BWC lasts from 2:1932Z to 2:20:39Z.  Because Mwimanzi does not dispute or identify evidence creating a dispute about the facts set for in SUMF No. 12, it should not be treated as disputed.  *See* Mwimanzi's response to SMUF No. 12.

**Defendants' SUMF No. 17**

17.     Officer Wilson believed that a pat down and frisk occurred, but not that a search had been conducted of Mwimanzi for contraband as Officer Seijo's role was not to conduct searches. Ex. C at 64:5-15.

**Mwimanzi's Response**

Plaintiff disputes that Defendant Wilson believed the facts asserted in this paragraph. Prior to searching Mr. Mwimanzi, Defendant Wilson asked if Mr. Mwimanzi had been searched and another officer stated "a Seijo search." Defs.' Ex. D (Def. Wilson's Body-Worn Camera Footage from Jan. 15, 2019) 2:19:40–44 (hereinafter Defs.' Ex. D ("Wilson BWC Video")). That statement, combined with Defendant Wilson's knowledge of Officer Seijo's effectiveness in conducting searches, *see* Part II, *infra* ¶¶ 16, 17, and Wilson's contradictory statements at deposition on the basis for his purported assumption that a frisk, rather than a search occurred, *id.* ¶¶ 14, 15, undercuts Defendant Wilson's testimony about the type of search he believed Officer Seijo conducted.

**Defendants' Reply**

Mwimanzi's claimed dispute is not material and he has not presented facts to support the claimed dispute.  Indeed, the exhibits presented to support the claimed dispute do not do so.  *See* Defs.'

Ex. D (Def. Wilson's Body-Worn Camera Footage from Jan. 15, 2019) 2:19:40–44.  The

following except further supports Officer Wilson's good faith belief.  *See* below:

> Q:   What did you say?
> A:   "Has he been searched?"
> Q:   What did the officer say?
> A:   It was hard to tell, but it sounded like he said "a Seijo search."
> Q:   What does that mean to you?  Did it indicate that Mr. Mwimanzi had been searched previously?
> A:   No.  That's why I didn't – it was Sutton that said it, so I think I asked again.
> Q:   So before we continue looking at the footage, I just want to clarify.  The phrase "Seijo search," did that in any way suggest to you that Mr. Mwimanzi had been searched incompletely?
> A:   No.  But Seijo wasn't one of the people that was told to search people on that day.
> Q:   So if Officer Seijo said that there was a Seijo search –
> A:   It would mean nothing to me.
> Q:   Would you have assumed that Officer Seijo did not conduct a search?
> A:   I don't think I would assume anything.  I would assume, because of what roles we had, it was a pat down.

*See* Officer Wilson Dep. at 63:11-64:15, Pl.'s Ex. C.

> Q:   After having watched that video, what would you infer that term meant, the term "Seijo search"?
> A:   I don't know.  It was Sutton that said it.  He jokes around a lot.  He probably was just saying that – I don't know.  Honestly, I'm not going to say what another officer was thinking at the time.  But for me, I took it as he hadn't been fully searched.
> Q:   Was there anything that lead you to that conclusion?
> A:   No.
> Q:   Why did you reach that conclusion?
> A:   Just because, obviously, I searched him.  So if I would have thought he would have been searched before, I wouldn't have searched him again.

*See Id*. at 69:11-70:4.  *See also* Pl.'s Response to Interrogatory No. 4 (An officer "frisked"

Mwimanzi and then Officer Sutton directed him to another officer who allegedly searched him.

Mwimanzi does not identify Officer Seijo as having searched him.)  Because Mwimanzi has not

created a material factual dispute, his claimed dispute is not enough to stave off summary

judgment in Defendants' favor.

**Defendants' SUMF No. 18**

18.     Officer Wilson began his search of Mwimanzi in his groin area because "in [his] experience, that's where a lot of drug dealers and users hide things." Ex. C at 46:14-21.

**Mwimanzi's Response**

Plaintiff disputes that Defendant Wilson chose to begin his search with Mr. Mwimanzi's groin solely because he believed he would find drugs there. Instead, Mr. Mwimanzi contends that Defendant Wilson targeted his groin out of a desire to humiliate or otherwise harm him. To support this assertion, Mr. Mwimanzi points to Defendant Wilson's decision to conduct the search despite knowing that Mr. Mwimanzi had been searched previously, *see* Part II, *infra*, ¶¶ 13–18; Defendant Wilson's request that Mr. Mwimanzi spread his legs wider than he had for other officers, *id.* ¶ 19; Defendant Wilson's targeting of Mr. Mwimanzi's testicles and buttocks to the exclusion of other body parts, *id.* ¶¶ 20, 21; the aggressive, humiliating way he searched Mr. Mwimanzi's testicles and buttocks, and his refusal to stop or change how he conducted the search in response to Mr. Mwimanzi's protests *id.* ¶¶ 22–31; the prolonged pain and emotion distress caused by Defendant Wilson's search, particularly given that Mr. Mwimanzi did not complain that other searches he experienced on January 15, 2019 caused him similar hardship, *id.* ¶¶ 5, 10, 36–43, 46; and the look of satisfaction Defendant Wilson displayed at the end of the search as well as his taunting expression when he subsequently encountered Mr. Mwimanzi, *id.* ¶¶ 32, 47–48.

**Defendants' Reply**

Mwimanzi's claimed dispute is not enough to create a genuine dispute about the materiality of SUMF No. 18.  Mwimanzi has presented no evidence that contradicts why Officer Wilson *began* his search of Mwimanzi in his groin area.  Therefore, SUMF No. 18 should not be treated as

disputed.  *See* Pl.'s Response No. 18.  Rather, Mwimanzi speculates about Officer Wilson's intentions in beginning the search in his groin area.  *See* ¶¶ 10, 13–22, 32, and 46-48.

**Defendants' SUMF No. 19**

19.     Officer Wilson believed the search was appropriate because what was contained in the search warrant could be on Mwimanzi's body. Ex. C at 21:4-22.

**Mwimanzi's Response**

Plaintiff disputes that Defendant Wilson believed his search of Mr. Mwimanzi was appropriate for the reasons discussed in response to ¶ 18.

**Defendants' Reply**

Mwimanzi's claimed dispute is not enough to create a *genuine* dispute about Officer Wilson's belief that the items identified in the warrant could be found on Mwimanzi's body.  *See* ¶¶ 10, 13–22, 32, and 46-48.  *Cf.* Search Warrant, Ex. A.  Indeed, Mwimanzi has presented no evidence that contradicts Officer Wilson's belief.  *See* Pl.'s Response to SUMF ¶ 18.

**Defendants' SUMF No. 20**

20.     And Officer Wilson believed his conduct was lawful based on MPD General Order 702.03. Ex. C at 21:4-22:8.

**Mwimanzi's Response**

Plaintiff does not dispute that Defendant testified that he believed that MPD General Order 702.03 authorized him to initiate his search of Mr. Mwimanzi but disputes that Defendant Wilson believed that the manner in which he searched Mr. Mwimanzi was lawful for the reasons discussed in response to ¶ 18.

**Defendants' Reply**

Because Mwimanzi does not dispute that Officer Wilson testified that he believed his conduct was lawful based on MPD General Order 702.03 and the record identified to support the claimed dispute does not do so, SUMF No. 20 should not be treated as disputed.  That Mwimanzi believes the manner in which the search was conducted was unlawful is not enough to create a genuine disputed issue about Officer Wilson's belief that MPD General Order 702.03 supported his decision to search Mwimanzi nor does it create a dispute as to whether the manner in which the search was lawful.  *See* Mwimanzi's Response No. 20 and MPD General Order 702.03, Ex. C at 21:4-22:8.

Date:  October 25, 2021                                Respectfully submitted,

                                                       KARL A. RACINE
                                                       Attorney General for the District of Columbia

                                                       CHAD COPELAND
                                                       Deputy Attorney General
                                                       Civil Litigation Division

                                                       */s/ Patricia A. Oxendine*
                                                       PATRICIA A. OXENDINE
                                                       D.C. Bar No. 428132
                                                       Chief, Civil Litigation Division, Section I

*/s/Stephanie M. Corcoran*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 47858
Senior Assistant Attorney General
STEPHANIE M. CORCORAN
D.C. Bar No. 1510874
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
(202) 724-6600; (202) 615-3910 (direct)
(202) 759-0825; (202) 741-0595 (fax)
kerslyn.featherstone@dc.gov;
stephanie.corcoran@dc.gov

*Counsel for Defendants Officer Joshua Wilson and
the District of Columbia*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MBALAMINWE MWIMANZI,

*Plaintiff*,

v.

JOSHUA WILSON, *et al.*,

*Defendants*.

20-cv-00079 (CRC)

---

## DEFENDANTS OFFICER JOSHUA WILSON AND THE DISTRICT OF COLUMBIA'S RESPONSES TO PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

Defendants Officer Joshua Wilson and the District of Columbia (the District) respond to Plaintiff Mbalaminwe Mwimanzi's Statement of Disputed Material Facts.

**Mwimanzi's Statement of Disputed Material Fact No. 1**

1.      Mbalaminwe Mwimanzi immigrated with his family to the United States from Tanzania at eight years old, grew up in the Washington, D.C. area, and has continued to live in the region since, graduating from high school, attending some college, and working in several different fields. Pl.'s Ex. A (Deposition of Mbalaminwe Mwimanzi) 22:11–22, 24:22–26:8; (May 21, 2021) (hereinafter "Pl.'s Ex. A (Mwimanzi Dep.)").

**Defendants' Response**

For the purposes of this motion, Defendants do not dispute SDMF No. 1.  However, the facts in SDMF No. 1 are not material to his claims for violation of his Fourth Amendment rights or his claim for battery.

**Mwimanzi's Statement of Disputed Material Fact No. 2**

2.       On January 15, 2019, Mr. Mwimanzi visited his friend Margie Whitehead at her

apartment, located at 769 Quebec Places Northwest, Apartment 2, to watch television with

friends. Pl.'s Ex. A (Mwimanzi Dep.) 37:6-8, 39:20-40:9; *see also* Pl.'s Ex. B (Pl's Resp. to Defs.'

First Set of Interrogs.) ¶4 (hereinafter "Pl.'s Ex. B (Pl.'s Resp. to Interrogs.").

**Defendants' Response**

For the purposes of this motion, Defendants do not dispute SDMF No. 2 other than they have no

idea why Mwimanzi visited his friend as it is based on his self-serving testimony.  However, the

facts in SDMF No. 2 are not material to his claims for violation of his Fourth Amendment rights

or his claim for battery and do not preclude summary judgment.

**Mwimanzi's Statement of Disputed Material Fact No. 3**

3.       At approximately 9 p.m., officers with the District's Metropolitan Police Department

(MPD) broke down Ms. Whitehead's door and stormed into the apartment, ordering everyone

present to lie on the ground and submit to handcuffing, commands that Mr. Mwimanzi obeyed.

Pl.'s Ex. A (Mwimanzi Dep.) 61:10-62:9; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

For the purposes of this motion, Mwimanzi's SDMF No. 3 is undisputed and are not material nor

do they preclude summary judgment in Defendants' favor.

**Mwimanzi's Statement of Disputed Material Fact No. 4**

4.       After Mr. Mwimanzi was handcuffed, an officer helped him to his feet, patted him down,

and pulled out his wallet from his coat pocket to check his ID. Pl.'s Ex. A (Mwimanzi Dep.)

57:9-14; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

For the purposes of this motion, Mwimanzi's SDMF No. 4 is undisputed and does not preclude summary judgment in Defendants' favor as it does not show any misconduct by Officer Wilson nor does it show he had knowledge of these events. *See* Pl.'s Exs. A and B.

**Mwimanzi's Statement of Disputed Material Fact No. 5**

5.       Mr. Mwimanzi did not protest the way this officer inspected him. Pl.'s Ex. A (Mwimanzi Dep.) 119:21-120:1; *see also* Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

For the purposes of this motion, Mwimanzi's SDMF No. 5 is undisputed and does not show any misconduct committed by Officer Wilson or show that he had any knowledge of these activities. *See* Pl.'s Exs. A and B.

**Mwimanzi's Statement of Disputed Material Fact No. 6**

6.       The officer did not find any evidence, weapons, drugs, or other contraband on Mr. Mwimanzi's person. Compl., ECF No. 1 ¶ 15; Answer, ECF No. 4 ¶ 15 (admitting corresponding paragraph from complaint).

**Defendants' Response**

Undisputed.

**Mwimanzi's Statement of Disputed Material Fact No. 7**

7.       Officer Terrence Sutton Jr. called Mr. Mwimanzi toward him. Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

For the purposes of this motion, Mwimanzi's SDMF No. 7 does not show any conduct committed by Officer Wilson or that he had knowledge of Officer Sutton's actions. *See* Ex. B.

**Mwimanzi's Statement of Disputed Material Fact No. 8**

8.      Officer Sutton told Mr. Mwimanzi "you don't run shit" and referred him to Officer

Jose Seijo for another search, *id*.

**Defendants' Response**

This Court should not consider SDMF No. 8 because it is not supported by the evidence upon

which Mwimanzi relies and is not enough to create a material factual dispute.  *See* Pl.'s Ex. B

(Officer Jose Seijo is not identified in Mwimanzi's answer to the interrogatory).

**Mwimanzi's Statement of Disputed Material Fact No. 9**

9.      Officer Seijo searched Mr. Mwimanzi "more intrusively" than the mere frisk he

experienced previously. *Id*.

**Defendants' Response**

The Court should not consider SDMF No. 9 because it is not supported by the evidence upon

which Mwimanzi's relies and is not enough to create a material factual dispute.  *See* Pl.'s Ex. B

(Officer Jose Seijo is not identified in Mwimanzi's answer to the interrogatory).  Nor does it

show that Officer Wilson knew that Mwimanzi was "searched" by Officer Seijo or that the

manner in which Officer Wilson searched Mwimanzi was unlawful.  *Id.*

**Mwimanzi's Statement of Disputed Material Fact No. 10**

10.      Mr. Mwimanzi again did not criticize the manner in which Officer Seijo searched him.

Pl.'s Ex. A (Mwimanzi Dep.) 120:2-4; *see also* Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

The Court should not consider SDMF No. 10 because it is not supported by the evidence upon

which Mwimanzi's relies and is not enough to create a factual dispute.  *See* Pl.'s Exs. A & B

(Mwimanzi does not identify Officer Jose Seijo by name and his name is not identified in

Mwimanzi's answer to the interrogatory).  And Mwimanzi's statement does not show Officer

Wilson was that Officer Seijo searched Mwimanzi or the manner in which Officer Seijo

allegedly searched him or whether or not Mwimanzi complained.  Pl.'s Exs. A & B.

**Mwimanzi's Statement of Disputed Material Fact No. 11**

11.      Officer Seijo did not find any evidence, weapons, drugs, or other contraband on Mr.

Mwimanzi's person. Compl., ECF No. 1 ¶ 19; Answer, ECF No. 4 ¶ 19 (admitting corresponding

paragraph from complaint).

**Defendants' Response**

The Court should not consider SDMF No. 11 as it is not supported by admissible evidence;

neither the Compl. [1] nor Answer [4] are verified.  And neither mentions nor otherwise

identifies Officer Seijo by name. *Id.*  And SDMF No. 11 does not create a material factual

dispute because it does not show Officer Wilson knew that Officer Seijo searched Mwimanzi or

knew what he found or did not find.  Further answering, for purposes of this motion, the District

does not dispute SUMF No. 11 in that no weapons, drugs or contraband were found on

Mwimanzi's person.

**Mwimanzi's Statement of Disputed Material Fact No. 12**

12.      When Officer Seijo finished the search, Mr. Mwimanzi sat in a chair, still in handcuffs.

Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

The Court should not consider SDMF No. 12 because it is not supported by the evidence upon

which Mwimanzi's relies.  *See* Pl.'s Ex. B (Officer Jose Seijo is not identified in Mwimanzi's

answer to the interrogatory).   And SDMF No. 12 does not create a material factual dispute

because it does not show that Officer Wilson was aware of what Mwimanzi did after he was allegedly searched by Officer Seijo.

**Mwimanzi's Statement of Disputed Material Fact No. 13**

13.     Defendant Joshua Wilson approached Mr. Mwimanzi and ordered him to stand, and asked the other officers, "has he been searched," to which an officer responded "a Seijo search." Deposition of Joshua Wilson 63:6-18 (May 4, 2021) (hereinafter "Pl.'s Ex. C (Wilson Dep.)"); Defs.' Ex. D (Wilson BWC Video) 2:19:40-44.

**Defendants' Response**

Defendants do not dispute Mwimanzi's SDMF No. 13 but the record cited does not clearly reflect what exactly was said about "a Seijo search."  Further responding, Officer Wilson did not understand that Mwimanzi had been searched by Officer Seijo given his role was not to conduct searches that day.  *See* Officer Wilson's Dep. at 63:11-64:15; 69:11-70:4, Pl.'s Ex. C.  And SDMF No. 13 is not enough to create a material factual dispute because it is not enough to defeat Officer Wilson's qualified immunity defense.

**Mwimanzi's Statement of Disputed Material Fact No. 14**

14.     Defendant Wilson testified that he understood the phrase "Seijo search" to mean that Mr. Mwimanzi "hadn't been fully searched" but when asked whether there was anything that led him to that conclusion, Defendant Wilson answered "no."  Pl.'s Ex. C (Wilson Dep.) 69:11-23.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 14 because it is taken out of context and not fully supported by the part of the record upon Mwimanzi relies.  *See* Pl.'s Dep. at 69:11-23, Pl.'s Ex. A.  At deposition, Officer Wilson was asked "[a]fter having watched that video, what would you infer that term meant, the term "Seijo search," and he responded, "I don't know.  It

was Sutton that said it. He jokes around a lot. He probably was just saying that -- I don't know. Honestly, I'm not going to say what another officer was thinking at that time. But for me, I took it as he hadn't been fully searched." Officer Wilson's Dep. at 69:11-21. And when asked "[w]as there anything that lead you to that conclusion," he answered "[n]o." *Id.* at 22-23. But then when asked "[w]hy did you reach that conclusion," he answered "[j]ust because obviously, I searched him. So if I would have thought he would have been searched before, I wouldn't have searched him again." Officer Wilson's Dep. at 69:24-70:4. Thus, for purposes of Defendants' motion for summary judgment, SDMF No. 14 is not enough to create a genuine material factual dispute.

**Mwimanzi's Statement of Disputed Material Fact No. 15**

15.      Despite that statement, Defendant Wilson also testified that he did have a basis for his interpretation of the phrase "Seijo search" specifically, that Officer Seijo was not assigned to conduct searches that day. Pl.'s Ex. C (Wilson Dep.) 64:5-15. However, Defendant Wilson did not testify that officers effecting a search warrant refrain from taking on additional duties besides those assigned to them. *Id.*

**Defendants' Response**

Mwimanzi's SDMF No. 15 is not enough to create a material factual dispute to preclude summary judgment in Defendants' favor. *First*, it is not complete as Officer Wilson explained why he believed Officer Seijo did not search Mwimanzi. *See* Oficer Wilson's Dep. at 64:5-15, Ex. C (explaining it was not Officer Seijo's role to conduct a search). *Second,* because Officer Wilson was not asked whether officers effecting a search warrant refrain from taking on additional duties besides those assigned to them, it is not material that he did not provide this testimony. *See* Pl.'s Ex. C (Wilson Dep.) at 64:5-15.

**Mwimanzi's Statement of Disputed Material Fact No. 16**

16.     Defendant Wilson has worked with Officer Seijo and seen him conduct searches.

Pl.'s Ex. C (Wilson Dep.) 42:13-18.

**Defendants' Response**

Defendants do not dispute Mwimanzi's SDMF No. 16.

**Mwimanzi's Statement of Disputed Material Fact No. 17**

17.     At deposition, Defendant Wilson could not recall ever seeing Officer Seijo conduct a
search he deemed inadequate or wrong in any way and described Officer Seijo as "effective" at
conducting searches. Pl.'s Ex. C (Wilson Dep.) 42:13-43:17.

**Defendants' Response**

Defendants do not dispute Mwimanzi's SDMF No. 17.

**Mwimanzi's Statement of Disputed Material Fact No. 18**

18.     Nonetheless, Defendant Wilson told Mr. Mwimanzi to spread his legs. Pl.'s Ex. A
(Mwimanzi Dep.) 65:22-66:2; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

This Court need not consider Mwimanzi's SDMF No. 18 as it is contradicted by the BWC
footage.  Officer Wilson told Mwimanzi to spread his feet, not his legs.  *See* Officer Wilson's
Body Worn Camera (BWC), Ex. D from 02:19:32Z to 02:19:39Z.  Further responding, SDMF
No. 18 is not enough to create a material factual dispute that should preclude summary judgment
in Defendants' favor.

**Mwimanzi's Statement of Disputed Material Fact No. 19**

19.     Mr. Mwimanzi spread his legs around the same distance as he had for the prior searches;
Defendant Wilson told him to spread them wider.  *Id.*; *see also* Pl.'s Ex. A (Mwimanzi Dep.)
65:22-66:2.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 19 as it is contradicted by the BWC
footage.  Officer Wilson told Mwimanzi to spread his feet, not his legs.  *See* Oficer Wilson's
Body Worn Camera (BWC), Ex. D from 02:19:32Z to 02:19:39Z.  And Mwimanzi's self-serving
testimony is not enough to create a material factual dispute to preclude summary judgment in
Defendants' favor.

**Mwimanzi's Statement of Disputed Material Fact No. 20**

20.     Defendant Wilson did not search Mr. Mwimanzi's chest, his waistband, his socks, his hat,
or pull out his pants pockets. Pl.'s Ex. C (Wilson Dep.) 46:14-1, 47:5-10.

**Defendants' Response**

Defendants do not dispute Mwimanzi's SDMF No. 20 but it is not enough to create a material
factual dispute to preclude summary judgment in Defendants' favor.  Further answering, given
Mwimanzi's conduct during the search, Officer Wilson stopped his search.  *See* Pl.'s Ex. C at
47:5-10.

**Mwimanzi's Statement of Disputed Material Fact No. 21**

21.     The focus of his search consisted of two places: Mr. Mwimanzi's groin and his buttocks.
*Id.* (stating that search was limited to groin); Pl.'s Ex. A (Mwimanzi Dep.) 80:13- 81:5 (stating
that he did not recall Defendant Wilson searching anywhere but his groin and his buttocks).

**Defendants' Response**

The Court need not consider Mwimanzi's SDMF as it is not enough to create a material factual

dispute.  *First,* as Mwimanzi admits, he does not *recall* Officer Wilson searching anywhere but

his groin and buttocks; not that the focus was only of the groin and buttocks.  Pl.'s Ex. A

(Mwimanzi Dep.) at 80:13- 81:5.  *Second,* as Officer Wilson testified, "in [his] experience, [the

groin area is] where a lot of drug dealers and users hide things."  Ofc. Wilson Dep. at 46:14-21,

Ex. C.  Because Mwimanzi has not create a *material* factual dispute, SMDF No. 21 is not enough

to preclude summary judgment in Defendants' favor.

**Mwimanzi's Statement of Disputed Material Fact No. 22**

22.      Defendant Wilson reached inside Mr. Mwimanzi's buttocks through his jeans and, as Mr.

Mwimanzi testified, "pressed my anus with his finger as if he was trying to penetrate me." Pl.'s

Ex. A (Mwimanzi Dep.) 67:5-8; Pl.'s Ex. B (Pl''s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

For purposes of this motion, Defendants do not dispute Mwimanzi's cited testimony and it is not

enough to create a material factual dispute  Further responding, the evidence in this record about

this statement is as follows:  *See* Pl.'s Ex. A at 67:3-16:

> Q:     And when you use the term "fingered," what does that mean to you?
> A:     Fingered means that, you know, he – he pressed my – he pressed my anus with his
>        finger as if he was trying to penetrate me, you know.  Yes, I had jeans on, but he
>        applied enough pressure to – on my anus with his – you know, that's what I mean.
>        When you start using a part of your finger, Officer, to try to start pressing my
>        anus, that's what I mean by "fingering."
> Q:     And you would agree with me that his finger did not penetrate your anus.  It did
>        not go inside of you; correct?
> A:     Correct.

**Mwimanzi's Statement of Disputed Material Fact No. 23**

23.     Defendant Wilson placed his hands between Mr. Mwimanzi's legs rubbing each of Mr.

Mwimanzi's testicles against Mr. Mwimanzi's leg. Pl.'s Ex. A (Mwimanzi Dep.) 70:22 - 71:9;

Pl.'s Ex. B (Pl.'s Resp. to Defs.' Interrogs.) ¶ 4. Defendant Wilson also "us[ed] the power of his

hands to squeeze" each of Mr. Mwimanzi's testicles against his leg. *Id*. 71:10-71:21; Pl.'s Ex. B

(Pl.'s Resp. to Defs.' Interrogs.) ¶ 4.

**Defendants' Response**

Defendants do not dispute that Mwimanzi provided this self-serving testimony during deposition

and in response to interrogatory ¶ 4.  And while Officer Wilson disputes the characterization of

the search as described by Mwimanzi, it is not material given it does not show any unlawful

conduct committed by Officer Wilson or overcome his entitlement to qualified immunity and a

privilege for his conduct.

**Mwimanzi's Statement of Disputed Material Fact No. 24**

24.     Defendant Wilson did not feel anything in Mr. Mwimanzi's groin area. Pl.'s Ex. C

(Wilson Dep.) 48:3-5.

**Defendants' Response**

Defendants do not dispute Mwimanzi's SDMF No. 24.

**Mwimanzi's Statement of Disputed Material Fact No. 25**

25.     And he did not find any evidence, drugs, weapon or other contraband. Compl., ECF No.

1 ¶ 33; Answer, ECF No. 4 ¶ 33 (admitting corresponding paragraph in the complaint).

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 25 because it is not supported by

admissible evidence as neither the Complaint nor Answer are verified.  *See* Compl. [1] and

Answer [4].  Further responding, for purposes of this motion, Defendants do not otherwise dispute SDMF No. 25.

**Mwimanzi's Statement of Disputed Material Fact No. 26**

26.      Yet Defendant Wilson still squeezed and rubbed Mr. Mwimanzi's testicles at least twice. Pl.'s Ex. A (Mwimanzi Dep.) 83:16-17; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

Defendants do not dispute Mwimanzi's deposition testimony but disputes his self-serving characterization of the search conducted by Officer Wilson.  Because SDMF No. 26 is not *material* it does not preclude summary judgment because it does not show Officer Wilson acted unlawfully or otherwise violated Mwimanzi's Fourth Amendment rights or battered him.

**Mwimanzi's Statement of Disputed Material Fact No. 27**

27.      Mr. Mwimanzi flinched when Defendant Wilson began the search, *id.* 111:18-19, asked him to stop multiple times, *id.* 79:3-7, and gasped when he continued searching, *id*. *See also* Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 4.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 27 because it is largely contradicted by the contents of Officer Wilson's BWC.  Further responding, Mwimanzi's characterization of the search is not enough to preclude summary judgment as it does not show Officer Wilson acted unlawfully.  *See* Defs.'s Ex. D.

**Mwimanzi's Statement of Disputed Material Fact No. 28**

28.      Specifically, when Defendant Wilson began the search, Mr. Mwimanzi said "You're gonna fondle me, buddy? . . . You're fondling me, buddy. You're fondling me, buddy. . . . You just fondled me buddy." Defs.'Ex. D. at 2:20:06Z-2:20:14Z

**Defendants' Response**

Undisputed.  Further responding, Mwimanzi made these statements as identified in SDMF No. 28 even before the search began as shown in Officer Wilson's Body Worn Camera (BWC), Ex. D from 02:19:32Z to 02:19:39Z.  Because SDMF is not material it is not enough to preclude summary judgment.

**Mwimanzi's Statement of Disputed Material Fact No. 29**

29.    Then, as the search continued, Mr. Mwimanzi gasped and protested "Again? Again, though? Again! Oh my God, Again! Damn, you gonna finger fuck me? Damn, bruh." *Id.* at 2:20:23Z-2:20:31Z

**Defendants' Response**

Defendants do not dispute Mwimanzi made the statements in SDMF No. 29 but the statement that Mwimanzi's gasped is contradicted by Officer Wilson's Body Worn Camera (BWC), Ex. D from 02:19:32Z to 02:19:39Z .  But they are not material and are not enough to preclude summary judgment.

**Mwimanzi's Statement of Disputed Material Fact No. 30**

30.    Mr. Mwimanzi thought these statements would make clear to Defendant Wilson that he wanted him to stop:

> You are an officer and the words[,] "You are finger-fucking me. You are
> fondling me." That's to stop. You're not searching me. You're fondling me. . . .
> That means stop.

Pl.'s Ex. A (Mwimanzi Dep.) 109:16-21.

**Defendants' Response**

Defendants do not dispute that Mwimanzi made these statements as identified in SDMF No. 30 during deposition but they are not material nor enough to preclude summary judgment in Defendants' favor.  As Mwimanzi admits, he never used the word "stop," and he did not tell Officer Wilson he was in pain.  *See* Pl.'s Ex. A.  *See also* Officer Wilson's Body Worn Camera (BWC), Ex. D from 02:19:32Z to 02:19:39Z.

**Mwimanzi's Statement of Disputed Material Fact No. 31**

31.     But when Mr. Mwimanzi began to complain, Defendant Wilson did not stop. Defs.' Ex. D (Wilson BWC Video) 2:20:12-24; nor did he alter the way he was conducting the search, Pl.'s Ex. C (Wilson Dep.) 48:11-15.

**Defendants' Response**

For the purposes of this motion, Defendants do not dispute that Mwimanzi made comments that Officer Wilson was molesting him.  Nor do Defendants dispute Officer Wilson's deposition testimony.  But the BWC footage shows the search was limited because of Mwimanzi's behavior.  *See* Officer Wilson's Body Worn Camera (BWC), Ex. D from 02:19:32Z to 02:19:39Z SDMF.  And Mwimanzi never said he was in pain.  *Id.*  Pl.'s SMD No. 31 is not enough to create a material factual dispute sufficient to preclude summary judgment in Defendants' favor.

**Mwimanzi's Statement of Disputed Material Fact No. 32**

32.     Once he finished with Mr. Mwimanzi's groin and buttocks, Defendant Wilson looked at Mr. Mwimanzi, who had been handcuffed throughout the entirety of the search, with a look of satisfaction. Pl.'s Ex. B (Pl.'s Resp. to Def.'s Interrogs.) ¶ 4.

**Defendants' Response**

This Court need not consider Mwimanzi's SDMF No. 32 as it is not supported by competent evidence.  Rather, it is only Mwimanzi's self-serving opinion and is not enough to create a genuine material factual dispute in need of jury resolution.  *See* Pl.'s Ex. B (Pl.'s Resp. to Def.'s Interrogs.) ¶ 4.

**Mwimanzi's Statement of Disputed Material Fact No. 33**

33.     Defendant Wilson then ordered Mr. Mwimanzi to sit. Pl.'s Ex. C (Wilson Dep.) 47:24-48:2.

**Defendants' Response**

Defendants do not dispute that Officer Wilson instructed Mwimanzi to sit but the use of the word "then" is not supported by competent evidence but my Mwimanzi's self-serving opinion.  Nor is it enough to create a genuine material dispute to support denial of summary judgment in Defendants' favor.  *See* Pl.'s Ex. B (Pl.'s Resp. to Def.'s Interrogs.) ¶ 4.

 **Mwimanzi's Statement of Disputed Material Fact No. 34**

34.     At deposition, Defendant Wilson did not assert that he had authority to conduct the type of search Mr. Mwimanzi described but rather denied several of Mr. Mwimanzi's allegations as to the manner of the search. Specifically, he stated that he did not search Mr. Mwimanzi's buttocks, *id*. 49:17-22, noting that he would not reach inside a person's buttocks during a search and that if he believed an individual had evidence in their buttocks, he would inspect that area at the station, *id*. 30:14-31:10.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 34 because Officer Wilson answered the questions he was asked during deposition and explained that he believed the MPD General Order

702.03 authorized his search.  *See* Officer Wilson's Dep. at 21:4-22:8, Ex. C.  Even if

considered, this statement is not enough to create a material factual dispute.

**Mwimanzi's Statement of Disputed Material Fact No. 35**

35.     Defendant Wilson likewise said that he did not "think" he touched Mr. Mwimanzi's

testicles through his clothing. *Id*. 48:16-18.

**Defendants' Response**

Undisputed.

**Mwimanzi's Statement of Disputed Material Fact No. 36**

36.     During the search, Mr. Mwimanzi felt pain around his anus, throbbing pain in his

testicles that radiated to his abdomen, and had a headache. Pl.'s Ex. A (Mwimanzi Dep.) 76:17-

77:3; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 11.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 37 because while it may be relevant to

potential damages, it is not relevant or otherwise material to liability.  *See* Pl.'s Ex. A (Mwimanzi

Dep.) 76:17- 77:3; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 11.  Nor did Mwimanzi ever tell

Officer Wilson he was in pain nor does the BWC footage support Mwimanzi's SDMF No. 37.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's

self-serving testimony is not enough to create a genuine material dispute.

 **Mwimanzi's Statement of Disputed Material Fact No. 37**

37.     After the search, he complained of intense pain and rode in an ambulance to MedStar

Washington Hospital Center, where he received treatment. Pl.'s Ex. A (Mwimanzi Dep.) 84:7-10,

85:4-10.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 37 because while it may be relevant to

potential damages, it is not relevant or otherwise material to liability.  Indeed, Mwimanzi never

told Officer Wilson during the search that he was in pain or showed he was in pain.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's

self-serving testimony is not enough to create a genuine material dispute.  *See* Pl.'s Ex. A

(Mwimanzi Dep.) 84:7-10, 85:4-10.

### Mwimanzi's Statement of Disputed Material Fact No. 38

38.      The pain in Mr. Mwimanzi's buttocks lasted for three days after the search, making it

uncomfortable for him to perform essential activities such as walking or using the bathroom. Pl.'s

Ex. A (Mwimanzi Dep.) 69:3-7, 84:15-86:3; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 11.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 43 because while it may be relevant to

potential damages, it is not relevant or otherwise material to liability.  Indeed, Mwimanzi never

told Officer Wilson during the search that he was in pain or showed he was in pain.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's

self-serving testimony is not enough to create a genuine material dispute.  *See* Pl.'s Ex. B, Pl.'s

Resp. to Interrogs. ¶ 11; Pl.'s Dep. at 69:3-7, 84:15-86:3, Ex. A.

### Mwimanzi's Statement of Disputed Material Fact No. 39

39.      The throbbing pain in his testicles lasted a month after the search, making it difficult for

him to wear a harness, safety apparel that his employer required him to wear while performing

some of his duties. Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 11; Pl.'s Ex. A (Mwimanzi Dep.)

104:10-11. Pain when running or biking has lasted even longer. Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 11; Pl.'s Ex. A (Mwimanzi Dep.) 69:3-9.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 39 because while it may be relevant to potential damages, it is not relevant or otherwise material to liability.  Indeed, Mwimanzi never told Officer Wilson during the search that he was in pain or showed he was in pain.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's self-serving testimony is not enough to create a genuine material dispute.  *See* Pl.'s Ex. B, Pl.'s Resp. to Interrogs. ¶ 11; Pl.'s Dep. at 69:3-9, Ex. A.

**Mwimanzi's Statement of Disputed Material Fact No. 40**

40.     Mr. Mwimanzi considered seeking additional medical treatment but ultimately, he feared that a doctor would tell him that he could not bear children, and the anxiety about receiving that news made him avoid additional medical care. Pl.'s Ex. A (Mwimanzi Dep.) 100:1-5.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 40 because while it may be relevant to potential damages, it is not relevant or otherwise material to liability.  And Mwimanzi never told Officer Wilson during the search that he was in pain or showed he was in pain.  *See* Officer Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's self-serving testimony is not enough to create a genuine material dispute.  *See* Pl.'s Dep. at 100:1-5, Ex. A.

**Mwimanzi's Statement of Disputed Material Fact No. 41**

41.     Emotionally, "Mr. Mwimanzi feels depressed to the point of experiencing physical pain in his testicles and abdomen when he discusses or thinks about the incident-and "he generally

thinks about the incident when he sees police officers or hears sirens." Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 15; see also Pl.'s Ex. A (Mwimanzi Dep.) 89:15-17; 104:9-18.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 42 because while it may be relevant to potential damages, it is not relevant or otherwise material to liability. Indeed, Mwimanzi never told Officer Wilson during the search that he was in pain or showed he was in pain.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D. But even if considered, Mwimanzi's self-serving testimony is not enough to create a genuine material dispute. *See* Pl.'s Ex. B, Pl.'s Resp. to Interrogs. ¶ 15; Pl.'s Dep. at 89:15-17: 104:9-18, Ex. A.

**Mwimanzi's Statement of Disputed Material Fact No. 42**

42.      Mr. Mwimanzi also feels anxiety when he encounters law enforcement. Id. 93:17- 19, 98:17-99:1; Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 15.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 42 because while it may be relevant to potential damages, it is not relevant or otherwise material to liability. Indeed, Mwimanzi never told Officer Wilson during the search that he was in pain or showed he was in pain.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D. But even if considered, Mwimanzi's self-serving testimony is not enough to create a genuine material dispute. *See* Pl.'s Ex. B, Pl.'s Resp. to Interrogs. ¶ 15; Pl.'s Dep. at 98:17-99:1.

**Mwimanzi's Statement of Disputed Material Fact No. 43**

43.      Professionally, Mr. Mwimanzi took the day following the search off from work because he was in pain from Defendant Wilson's actions, and thereafter became districted at

work when he heard police sirens. Pl.'s Ex. B (Pl.'s Resp. to Interrogs.) ¶ 15; *see also* Pl.'s Ex. A (Mwimanzi Dep.) 104:4-11; 113:19.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 43 because while it may be relevant to potential damages, it is not relevant or otherwise material to liability.  Indeed, Mwimanzi never told Officer Wilson during the search that he was in pain or showed he was in pain.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's self-serving testimony is not enough to create a genuine material dispute.  *See* Pl.'s Ex. B, Pl.'s Resp. to Interrogs. ¶ 15; Pl.'s Dep. at 104:4-11; 113:19, Ex. A.

**Mwimanzi's Statement of Disputed Material Fact No. 44**

44.    Socially, the search, which occurred in front of Mr. Mwimanzi's friends, humiliated him. *Id*. 77:6-10.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 44 because while it may be relevant to potential damages, it is not relevant or otherwise material to liability.  Indeed, Mwimanzi never told Officer Wilson during the search that he was in pain or showed he was in pain.

*See* Officer Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's self-serving testimony is not enough to create a genuine material dispute.  *See* Pl.'s Dep. at 77:6-10, Ex. A.

**Mwimanzi's Statement of Disputed Material Fact No. 45**

45.    One friend who was present for the event mocked that Mr. Mwimanzi "acted like a little bitch," *id*. 92:9, and said that Mr. Mwimanzi enjoyed Defendant Wilson's search of him, id. 98:1-3. These comments have strained the relationship. *Id*. 97:15-18.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 45 because while it may be relevant to

potential damages, it is not relevant or otherwise material to liability.  Even if considered, it is

not enough to stave off summary judgment because it does not bear on the issue of liability.  *See*

Pl.'s Dep. at 92:9, 97:15-18, Ex. A.

**Mwimanzi's Statement of Disputed Material Fact No. 46**

46.     Additionally, the trauma of the incident has caused Mr. Mwimanzi to visit Ms.

Whitehead's home less frequently, weaking his friendship with her. Pl.'s Ex. B (Pl.'s Resp. to

Interrogs.) ¶ 20.

**Defendants' Response**

The Court should not consider Mwimanzi's SDMF No. 46 because while it may be relevant to

potential damages, it is not relevant or otherwise material to liability.  Mwimanzi never told

Officer Wilson during the search that he was in pain or showed he was in pain.  *See* Officer

Wilson's Body Worn Camera (BWC), Ex. D.  But even if considered, Mwimanzi's self-serving

testimony is not enough to create a genuine material dispute.  *See* Pl.'s Ex. B.

**Mwimanzi's Statement of Disputed Material Fact No. 47**

47.     Several months after the search, Officer Wilson spotted Mr. Mwimanzi on Quebec Place,

the same street where the search had occurred. Pl.'s Ex. A (Mwimanzi Dep.) 63:8-64:5.

**Defendants' Response**

This Court should not consider Mwimanzi's SDMF No. 47 as it is not material to his claims for

violation of his Fourth Amendment rights or his claim for battery.  And even if considered, f

Defendants are unable to respond whether or not Mwimanzi spotted Officer Wilson *months* after

the search but do not otherwise dispute this statement.  *See* Pl.'s Ex. A..

**Mwimanzi's Statement of Disputed Material Fact No. 48**

48.     Defendant Wilson stuck his tongue out at Mr. Mwimanzi as the officers drove past and

Mr. Mwimanzi called out "fucking sex offender." *Id.* 63:8-11, 64:2-7.

**Defendants' Response**

Defendants deny that Officer Wilson stuck out his tongue to Mwimanzi.  Further responding, this

Court should not consider SDMF No. 48 because it is not material to his claims for violation of

his Fourth Amendment rights or his claim for battery as the alleged conduct did not occur on the

day of the search or in the apartment where the search occurred.  *Se* Mwimanzi's Dep. at 63:3-

20, Pl.'s Ex. A.

**Mwimanzi's Statement of Disputed Material Fact No. 49**

49.     Mr. Mwimanzi considered Defendant Wilson's actions toward him not a police search but

a sexual assault, and he has been living with the trauma of that experience ever since. *Id.* 66:9-

13.

**Defendants' Response**

For the purposes of this motion, Defendants do not dispute that Mwimanzi provided this

testimony during deposition.  *Id.*  But this self-serving testimony does not support his claims for

violation of his Fourth Amendment rights or his claim for battery as it does not show any

misconduct committed by Officer Wilson and should otherwise not be considered.  *Id.*

Date:  October 25, 2021                          Respectfully submitted,

                                                 KARL A. RACINE
                                                 Attorney General for the District of Columbia

                                                 CHAD COPELAND
                                                 Deputy Attorney General
                                                 Civil Litigation Division

_/s/ Patricia A. Oxendine_
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

_/s/Stephanie M. Corcoran_
KERSLYN D. FEATHERSTONE
D.C. Bar No. 47858
Senior Assistant Attorney General
STEPHANIE M. CORCORAN
D.C. Bar No. 1510874
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
(202) 724-6600; (202) 615-3910 (direct)
(202) 759-0825; (202) 741-0595 (fax)
kerslyn.featherstone@dc.gov;
stephanie.corcoran@dc.gov

_Counsel for Defendants Officer Joshua Wilson and
the District of Columbia_

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MBALAMINWE MWIMANZI,

     *Plaintiff*,

  v.

JOSHUA WILSON, *et al.*,

     *Defendants*.

20-cv-00079 (CRC)

**DEFENDANTS OFFICER JOSHUA WILSON AND THE DISTRICT OF COLUMBIA'S
RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF HIS CONTINGENT MOTION FOR SUMMARY JUDGMENT**

   Defendants Officer Joshua Wilson and the District of Columbia (the District) respond to Plaintiff Mbalaminwe Mwimanzi's Statement of Undisputed Material Facts (SUMF) in Support of His Contingent Motion for Summary Judgment.

**Mwimanzi's SUMF No. 1**

Defendant Wilson was standing "right next to" the door when Sgt. Bryan Cox knocked and announced that the police had arrived. Pl.'s Ex. C (Wilson Dep.) 24:6-15.

**Defendants' Response:**

Undisputed.

**Mwimanzi's SUMF No. 2**

Defendant Wilson did not recall hearing any sounds coming from the other side of the door in the approximately five to ten seconds that elapsed between the time Sgt. Cox knocked and the time Defendant Wilson broke down the door with a ram. Pl.'s Ex. C (Wilson Dep.) 23:16-18; 24:19-25:8.

**Defendants' Response:**

Undisputed.

**Mwimanzi's SUMF No. 3**

At deposition, Defendant Wilson described his treatment of Mr. Mwimanzi as a search, not a

pat down, and explained that he conducted it to find drugs and drug paraphernalia.

Pl.'s Ex. C (Wilson Dep.) 38:22-39:11.

**Defendants' Response: Defendants' Response:**

Undisputed.

**Mwimanzi's SUMF No. 4**

Prior to conducting the search, Defendant Wilson had not seen anyone selling drugs in the

apartment, had not seen any drugs in the apartment, and had not seen any drug

paraphernalia in the apartment. Pl.'s Ex. C (Wilson Dep.) 39:12-40:3.

**Defendants' Response:**

Undisputed.

**Mwimanzi's SUMF No. 5**

Indeed, MPD reported that "nothing [was] seized" from Ms. Whitehead's residence

Pl.'s Ex. D (Warrant & Affidavit) at 1 (return filed with the D.C. Superior Court on January 16,

2019).

**Defendants Response:**

Undisputed.

**Mwimanzi's SUMF No. 6**

Defendant Wilson did not seek Mr. Mwimanzi's consent for the search. Compl., ECF No. 1 ¶

50; Answer, ECF No. 4 ¶ 50 (admitting corresponding paragraph in complaint).

**Defendants' Response:**

The Court should not consider Mwimanzi's SUMF No. 6 as it is not supported by admissible

evidence as neither the Complaint nor Answer are verified.  *See* Compl. [1]; Answer [4].

**Mwimanzi's SUMF No. 7**

Nor was Mr. Mwimanzi placed under arrest at the time of Defendant Wilson's search, or at any

other point that evening. *See* Compl., ECF No. 1 ¶ 52; Answer, ECF No. 4 ¶ 52 (admitting

corresponding paragraph in complaint).

**Defendants' Response:**

The Court should not consider Mwimanzi's SUMF No. 7 as it is not supported by admissible

evidence as neither the Complaint nor Answer are verified.  *See* Compl. [1]; Answer [4].

**Mwimanzi's SUMF No. 8**

Instead, the sole basis for Defendant Wilson's search of Mr. Mwimanzi was the January 15,

2019 warrant that Officer C. Hyder secured to search Mr. Whitehead's home.  Pl.'s Ex. C

(Wilson Dep.) 40:4-7 (Q. "So other than the information you had in the warrant, were there any

other facts that led you to search Mr. Mwimanzi?" A. "No. Just the warrant.").

**Defendants' Response:**

Defendants admit that Officer Wilson gave the testimony as identified in SUMF No. 8.  Further

responding, Officer Wilson also testified that he believed MPD General Order 702.03 supported

his decision to search Mwimanzi.  *See* Officer Wilson Dep. at 21:4-22:8, Ex. C.

**Mwimanzi's SUMF No. 9**

The D.C. Superior Court judge who issued that warrant found "probable cause to believe that in

the **<u>Residence</u>** known as 769 **Quebec Place #2 Northwest Washington, D.C. 20010**. there is

now being concealed property, namely" drugs, drug paraphernalia, and related items. Pl.'s Ex. D

(Warrant & Affidavit) at 1 (emphasis original).

**Defendants' Response:**

Defendants admit that the warrant states the information as identified in SUMF No. 9.  Further

responding, the Warrant and Affidavit identify many reasons why the Court found probable

cause and those reasons cannot be segregated from each other and taken out of context.  *See* Pl.'s

Ex. D (Warrant & Affidavit) at 1 (emphasis original).

**Mwimanzi's SUMF No. 10**

The warrant authorized MPD "within 10 days of the date of issuance of this warrant to search at

any time of the **(day or night)** the designated **Residence** for the property specified."  *Id.*

(emphasis original).

**Defendants' Response:**

Undisputed.

**Mwimanzi's SUMF No. 11**

The warrant did not contain any statements authorizing officers to search people found in the

residence; nor did the judge state that probable cause existed to believe any people in the

residence, known or unknown, would have those items on their person at any specific time, let

alone within the ten-day period the officers had to execute the warrant. *See id.*

**Defendants' Response:**

This SUMF is a legal conclusion.  But Officer Wilson believed he was authorized to conduct a

search of Mwimanzi based on the contents of the warrant and MPD General Order 702.03.  *See*

Pl.'s Ex. D (Warrant & Affidavit) at 1 (emphasis original); Officer Wilson Dep. at 21:4-22:8, Ex.

C.  **Mwimanzi's SUMF No. 12**

Officer Hyder did not request such a finding or state in his affidavit that probable cause

supported such a finding.  *See id.* ("Affiant submits that there is probable cause to believe that

inside of the <u>Residence</u> known as **769 Quebec Place #2 Northwest Washington, D.C.**

**20010** . . . there is now being concealed property." (quoting affidavit; emphasis original)).

**Defendants' Response:**

SUMF No. 12 is confusing as phrased.  But Defendants admit that the warrant states there is

probable cause to believe that inside of the residence…there is now being concealed property

and that property is identified as drugs, narcotics, drug paraphernalia, etc.  *See* Pl.'s Ex. D

(Warrant & Affidavit).  Further responding, in his Affidavit, Officer Hyder included facts which

would support a finding that individuals in Whitehead's residence could harbor drugs.  *See*

Officer Hyder's Affidavit (indicated that White allows multiple individuals in her residence to

deal drugs; and that multiple drug users and dealers were entering the apartment to deal drugs.)

*Id.*

**Mwimanzi's SUMF No. 13**

Other than Margie Whitehead, who was identified as the leaseholder, the affidavit did not

mention any individuals by name, nor did it provide a physical description of any other

individuals. *Id.* at 2-5.

**Defendants' Response:**

Undisputed.

**Mwimanzi's SUMF No. 14**

Prior to entering Ms. Whitehead's apartment, Defendant Wilson received a copy of the warrant,

attended a briefing on the affidavit, and knew that the warrant said nothing about searching

individuals and that it did not identify Mr. Mwimanzi. Pl.'s Ex. C (Wilson Dep.) 17:8-19; 18:5-

9, 18.

**Defendants' Response:**

Undisputed that Officer Wilson received a copy of the warrant and attended a briefing on the affidavit.  While the warrant did not specifically mention searching individuals or mention Whitehead by name, the affidavit in support of the application for the warrant identified Whitehead many times and discussed individuals entering and exiting her apartment and drug transactions occurring involving those individuals entering and existing her apartment.  *See* Pl.'s Ex. C.  *See also* Application in Support of Search Warrant.  *See* Pl.'s Ex. D (Warrant & Affidavit).  Thus, Defendants dispute that Officer Wilson knew he could not search Mwimanzi.

**Mwimanzi's SUMF No. 15**

He therefore knew or should have known that Ms. Whitehead was the leaseholder, and Mr. Mwimanzi was not. *See id.*; Pl.'s Ex. D (Warrant & Affidavit) at 2-5. He nonetheless believed that MPD General Order 702.03 and D.C. Code § 23-524 authorized to search everyone inside Ms. Whitehead's apartment.  Pl.'s Ex. E (Wilson Answer to Pl.'s First Set of Interrog.) ¶ 4.

**Defendants' Response:**

The Court should not consider SUMF No. 15 because it is a legal argument and not a factual statement as required under Fed. R. Civ. P. 56.  Nonetheless, Defendants admit that Officer Wilson believed he was allowed to search Mwimanzi based on the Search Warrant and MPD Order 702.03.  Further responding, Officer Wilson gave no deposition testimony about the statute identified in SUMF No.15.  *See* Pl.'s Ex. C.

**Mwimanzi's SUMF No. 16**

At deposition, Defendant Wilson testified that it was his understanding that under D.C. policy, when officers have a warrant to search a private residence, "everybody [inside theresidence] can be searched as long as . . . what's contained in the search warrant can be contained on their body in the scope of the search warrant." Pl.'s Ex. C (Wilson Dep.) 21:15.

**Defendants' Response:**

Undisputed that Officer Wilson testified that he believed MPD General Order 702.03 allowed him to search individuals in private residences based on what is contained in the Search Warrant. *See* also Pl.'s Ex. C, Ofc. Wilson Dep. at 21:15-25.

**Mwimanzi's SUMF No. 17**

Because "drugs and drug paraphernalia can be contained on someone's body," a warrant for those items means that "everybody is subject to the search that's inside the residence at that time." *Id.* 21:18-23.

**Defendants' Response:**

Defendants admit that Officer Wilson testified consistent with SUMF No. 17. *See* also Pl.'s Ex. C, Ofc. Wilson Dep. at 21:15-25.

## DEFENDANTS' STATEMENTS OF UNDISPUTED FACTS WHICH PRECLUDE PARTIAL SUMMARY JUDGMENT TO MWIMANZI

1.    In support of the Application Supporting Search Warrant, Officer Hyder explained that his investigation revealed there were complaints that Whitehead allowed multiple individuals into her apartment to deal drugs. *See* Pl.'s Ex. D (Warrant & Affidavit).

2.    Officer Hyder reported complaints about drug activity coming from Whitehead's apartment. *See* Pl.'s Ex. D (Warrant & Affidavit).

3.    Whitehead allowed other individuals to use her apartment. *See* Pl.'s Ex. D (Warrant & Affidavit).

4.    On a daily basis there had been heavy foot traffic coming from Whitehead's apartment. *See* Pl.'s Ex. D (Warrant & Affidavit).

5.      A suspect (Suspect 1) was seen entering Whitehead's apartment on a daily basis and was observed engaged in hand-to-hand drug transactions in front of the apartment building.  *See* Pl.'s Ex. D (Warrant & Affidavit).

6.      Another suspect (Suspect 2) was observed exiting Whitehead's apartment and engaging in a hand-to-hand crack cocaine transaction outside the apartment building with another individual.  *See* Pl.'s Ex. D (Warrant & Affidavit).

7.      In deciding on whether to grant the application for the search warrant, the judge relied on the affidavit in support of the warrant to find probable cause for the search.  *See* Search Warrant, Defs.' Ex. A.

8.      Officer Wilson received a copy of the warrant and attended a briefing on the affidavit which contained the information set forth in SUMF Nos. 1-7.  Pl.'s Ex. C (Wilson Dep.) at 17:8-19; 18:5-9, 18.

9.      MPD Officers executed the search warrant at Whitehead's apartment on Quebec Street, NW on January 15, 2019.  Officers knocked on the door but because no one answered, the door was rammed and the officers entered.  Defs.' Ex. B; Pl.'s Ex. C (Wilson Dep.) at 23:16-18; 24:19-25:8.

10.     The video shows that even when Officer Wilson is not touching Mwimanzi, he says "you want to fondle me buddy." BWC footage, Defs.' Ex. D.

11.     There is no showing on the BWC footage that Mwimanzi "gasped" as he claims.  *Id*. at 02:19:32Z to 02:20:39Z.

12.     Not once does Mwimanzi say he is in pain nor did he tell Officer Wilson that he was hurt or tell Officer Wilson that he was hurting him.  *Id.*

13.     Officer Wilson took a couple of sweeps in Mwimanzi's groin area to search for drugs. Pl.'s Ex. C (Wilson Dep.) at 70:18-25.

14.     Officer Wilson relied on the Search Warrant, MPD General Order 702.03, and what he learned at the briefing he attended when he searched Mwimanzi.  Pl.'s Ex. C (Wilson Dep.) at 17:8-19; 18:5-9, 18; 21:4-22:8.

15.     Mwimanzi admits that another officer only frisked him; the officer did not search him. Pl.'s Ex. B, Response to Interrogatory No. 4.

16.     Mwimanzi has not pointed to an MPD final policymaker who acted with deliberate indifference to his constitutional rights.  *See* Record.

17.     Mwimanzi did not identify other searches by other MPD officers conducting searches under similar circumstances to show a District custom, practice or policy which led to the January 15, 2019 search.  *See* Record.

18.     Officer Wilson searched Mwimanzi for drugs.  Pl.'s Ex. C (Wilson Dep.) 38:22-39:11.

Date: October 25, 2021                    Respectfully submitted,

                                          KARL A. RACINE
                                          Attorney General for the District of Columbia

                                          CHAD COPELAND
                                          Deputy Attorney General
                                          Civil Litigation Division

                                          */s/ Patricia A. Oxendine*
                                          PATRICIA A. OXENDINE
                                          D.C. Bar No. 428132
                                          Chief, Civil Litigation Division, Section I

*/s/Stephanie M. Corcoran*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 47858
Senior Assistant Attorney General
STEPHANIE M. CORCORAN
D.C. Bar No. 1510874
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
(202) 724-6600; (202) 615-3910 (direct)
(202) 759-0825; (202) 741-0595 (fax)
kerslyn.featherstone@dc.gov;
stephanie.corcoran@dc.gov

*Counsel for Defendants Officer Joshua Wilson and the District of Columbia*