**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MBALAMINWE MWIMANZI,

*Plaintiff*,

v.

JOSHUA WILSON, *et al*.,

*Defendants*.

20-cv-00079 (CRC)

---

## <u>DEFENDANTS OFFICER JOSHUA WILSON AND THE DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CONTINGENT MOTION FOR SUMMARY JUDGMENT</u>

Defendant Officer Joshua Wilson and the District of Columbia (the District) reply to Plaintiff Mbalaminwe Mwimanzi's Opposition to their Motion for Summary Judgment and oppose his Contingent Motion for Summary Judgment [31, 32].

### INTRODUCTION

Mwimanzi provides a narrative of extraneous material intended to sensationalize and rewrite the narrative about what occurred on January 15, 2019 when Officer Wilson searched him.  But given the relevant and material facts and applicable law here, Officer Wilson is entitled to qualified immunity and a privilege for searching Mwimanzi.  And the District is entitled to summary judgment under the operative complaint because it enjoys the same defenses as Officer Wilson—who did not violate Mwimanzi's constitutional rights.  And Mwimanzi's challenges to District law fails as the statute is not facially unconstitutional nor unconstitutional as applied to him (if it was even applied to him).  Thus, Mwimanzi's motion for partial summary judgment should be denied.

**FACTS**

When Officer C. Hyder applied for a search warrant on January 15, 2019, he included an affidavit in support of the requested search warrant.  Defendants' Statement of Undisputed Material Facts Precluding Partial Summary Judgment (SUMF PPSJ) ¶ 1.  Margie Whitehead was identified in the affidavit as were other individuals (not by name); they were identified as drug dealers and users who were seen entering and exiting Whitehead's apartment and engaging in drug transactions on a daily basis.  SUMF PPSJ ¶¶ 3, 4.  In deciding on whether to grant the application for the search warrant, the judge relied on the affidavit in support of the warrant to find probable cause for the search.  *See* SUMF PPSJ ¶ 7.  Officer Wilson received a copy of the search warrant, and attended a briefing about the affidavit.  Defs. Response to Pl.'s SUMF ¶ 14.

On January 15, 2019, MPD Officers executed the search warrant at Whitehead's apartment on Quebec Street, NW.  *See* SUMF PPSJ ¶ 9.  Officers knocked on the door but because no one answered, the door was rammed and the officers entered.  *Id.*  Officer Wilson searched Mwimanzi for items identified in the warrant that could be secreted on Mwimanzi's body.  Defs.' SUMF ¶ 19.

On January 13, 2020, Mwimanzi sued Officer Wilson alleging two claims:  Claim 1:  Violation of 42 U.S.C. § 1983 for the alleged unreasonable search that he describes as a "sexual assault" and Claim 2:  Battery, that he describes as intentional molestation.  Compl. [1].  Discovery closed on May 31, 2021.  *See* March 9, 2021 Minute Entry.

On July 1, 2021, Mwimanzi moved to amend his complaint to add a municipal liability claim against the District.  *See* Mot. to Amend [24].  On August 6, 2021, Defendants opposed Mwimanzi's motion to amend [26] and moved for summary judgment [27].  On September 10, 2021, Mwimanzi filed an omnibus reply to Defendants' opposition to his motion to amend,

opposition to Defendants' motion for summary judgment, and contingent partial motion for summary judgment [30, 31, 32].  Defendants now reply to Mwimanzi's opposition to their motion for summary judgment and oppose Mwimanzi's contingent partial motion for summary judgment.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . ."  As the D.C. Circuit recently stated, "[a] dispute about a material fact is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Chambers v. District of Columbia*, No. 19–7098, 2021 WL 646955, at *1 (D.C. Cir. Feb. 19, 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

## ARGUMENT

I.  **Officer Wilson Is Entitled to Qualified Immunity Under 42 U.S.C. § 1983 for Searching Mwimanzi.**

A.  **Officer Wilson Violated No Clearly Established Law.**

Mwimanzi argues Officer Wilson "reached into [his] buttocks through his jeans and pressed hard on the area around his anus, as if he wanted to penetrate it."  Pl.'s Brief at 6.  That "[Officer Wilson] reached between [his] legs, rubbed [his] testicles against [his] legs, and "use[d] the power of his hands to squeeze" each testicle against [his] leg, causing [him] to feel intense pain in his groin radiating to his abdomen."  *Id.*  And that Officer Wilson told him to spread his legs further than he had been ordered to do before.  *Id.* at 5.  Thus, according to Mwimanzi, Officer Wilson violated his Fourth Amendment rights in a way that qualified

immunity does not shield.  *See* Pl.'s Brief at 29.  And that Officer Wilson's conduct violated clearly established law.  *Id.*  It does not.  The Supreme Court's holdings in *City of Tahlequah, Oklahoma v. Bond*, No. 20-1668, 2021 WL 4822664, at \*2 (U.S. Oct. 18, 2021), *Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662 (U.S. Oct. 18, 2021) (per curiam), and *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018), focus on and addresses officers' entitlement to qualified immunity and undercut Mwimanzi's arguments.  As the Supreme Court made clear in these cases, because an officer must have violated *clearly established law* to undercut an entitlement to qualified immunity, courts must not define clearly established law at too high a level of generality.  *See City of Tahlequah* at No. 20-1668, 2021 WL 4822664, at \*2, *citing Ashcroft* v. *al-Kidd*, 563 U. S. 731, 742 (2011).  *See also Rivas-Villegas*, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas,* No. 20-1539, 2021 WL 4822662, at \*2, citing *Brosseau* v. *Haugen*, 543 U. S. 194, 198 (2004) (*per curiam*) (internal quotation marks omitted).  "It is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *City of Tahlequah* at No. 20-1668, 2021 WL 4822664, at \*2, *citing Wesby*, 583 U. S., at ___ (slip op., at 14).

In *City of Tahlequah*, the ex-wife of Dominic Rollice called the police asking for assistance with her ex-husband who was intoxicated and would not leave her home; he was in her garage.  When the officers arrived, they engaged the ex-husband in conversation.  He became fidgety, and when the officers asked if they could search him, he stepped back, picked up a hammer, raised it above his head, and moved towards the police.  The police shot and killed him. The events were captured on BWC footage although during certain parts of the video, there was

no sound.  The decedent's estate sued the officers under 42 U.S.C. § 1983 on the basis that the

decedent had a right to be free from excessive force.  The trial court granted qualified immunity

to the police officers but, on appeal, the decision was reversed.  The Tenth Circuit found that

several cases, "most notably *Allen* v. *Muskogee*, 119 F. 3d 837 (CA10 1997), clearly established

that the officers' conduct was unlawful."  *City of Tahlequah* at No. 20-1668, 2021 WL 4822664,

at *2.  The petition reached the Supreme Court and it reversed the Tenth Circuit's decision.  It

reasoned that "it did not need to decide whether the officers violated the Fourth Amendment in

the first place, or whether recklessly creating a situation that requires deadly force can itself

violate the Fourth Amendment."  *Id.*  Rather, the Supreme Court concluded that the officers

plainly did not violate any clearly established law.  *Id.  See also Rivas-Villegas,* No. 20-1539,

2021 WL 4822662, at *2 (holding an officer's conduct in placing his knee on suspect's back for

no more than eight seconds, and only on the side of his back near the knife that officers were in

the process of retrieving, did not violate a clearly established right against excessive force).  The

inquiry about whether established law exists "must be undertaken in light of the specific context

of the case, not as a broad general proposition."  *Id.*, citing *Brosseau* v. *Haugen*, 543 U. S. 194,

198 (2004) (*per curiam*) (internal quotation marks omitted).  The Supreme Court reasoned that

"[p]recedent involving similar facts can help move a case beyond the otherwise hazy borders

between excessive and acceptable force and thereby provide an officer notice that a specific use

of force is unlawful."  *Rivas-Villegas at *2, citing Kisela* v. *Hughes*, 584 U. S. ___, ___ (2018)

(*per curiam*) (slip op., at 5) (internal quotation marks omitted).  Here, there is no established law

that conducting a search for drugs in a suspect's groin area based on a search warrant, affidavit,

and MPD General Order violates the constitution.  And Mwimanzi points to none.

The cases Mwimazi relies on do not establish clear law sufficient to deprive Officer Wilson of qualified immunity.  *See* Pl.'s Brief.  *See also Taylor v. Riojas*, 141 S. Ct. 52, 53-54, 208 L. Ed. 2d 164 (2020), holding that "particularly egregious facts" alone should have alerted any reasonable officer that the conduct at issue was unconstitutional.  In *Taylor*, the plaintiff, an inmate, alleges he was confined in shockingly unsanitary cells for six full days.  *Taylor*, 141 S. Ct. at 53.  Taylor did not eat or drink for nearly four days because he thought his food and water would be contaminated.  And he was placed in a frigidly cold cell with a clogged drain which was meant to dispose of bodily waste; this caused Taylor to hold his bladder for over 24 hours. *Id.*  When he relieved himself, the clogged drain overflowed and raw sewage spilled across the floor.  *Id.*  He was without clothing, did not have a bunk, and was left to sleep naked in the sewage.  *Id.*  The Supreme Court, highlighting the extreme circumstances presented by *Taylor*, reasoned that no reasonable correctional officer could have concluded "....it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time."  *Id.* at 53-54.  The facts in *Taylor* are a far cry different than the facts here which do not show shocking misconduct.  Here, Officer Wilson began his search of Mwimanzi's groin area for drugs; a place, from his experience, drug dealers and users hide drugs.  Defs.' SUMF No. 18. Any reasonable police officer searching a person for contraband as identified in a search warrant would not conclude that Officer Wilson's search of Mwimanzi was constitutionally impermissible.  That Mwimanzi characterizes the search as sexually offensive does not by itself make it shocking or particularly egregious.  In fact, a search for drugs often is different than a search for other items and searching a man's groin area or buttocks for drugs does not lend itself to sexual misconduct or shocking behavior.  And the law does not say that an officer may not search a man's groin area and buttocks for drugs and contraband.

Mwimanzi's reliance on *Latits* as persuasive authority in his efforts to discount the contradictions in his testimony and actions through the BWC footage is not helpful for him. *See Latits v. Phillips*, 873 F.3d 541 (6th Cir. 2017). *Latits* involved a vehicle chase that ended in a fatal shooting. *Id.* The events of the chase and shooting were recorded by video cameras mounted on the dashboards of four separate police vehicles. *Id.* at 544. The *Latits* court ruled that the video footage contradicted the defendant officer's testimony and viewed the evidence in the light depicted by the video. *Id.* at 549, *citing Scott v. Harris*, 550 U.S. 372 (2007). And while the *Latits* court ruled that the defendant officer's use of deadly force was objectively unreasonable and in violation of Latits's constitutional rights, it concluded that at the time the defendant officer took action, the existing precedent did not make it clear to reasonable officials that what the officer did violated the Fourth Amendment. *Id.* at 552 (The "[p]laintiff has not identified any caselaw where an officer under sufficiently similar circumstances was held to have violated the Fourth Amendment, and neither have we.) Because the facts of the case failed to satisfy the "clearly established" prong of the qualified immunity doctrine, the officer was granted qualified immunity. *Id.* at 553. So too here, given that Mwimanzi's allegations and testimony are contradicted by the BWC footage, this Court, like the *Latits* court, should look to the video evidence when deciding the officer's entitlement to qualified immunity. And just as the *Latits* court found that there was no established law showing that the officer's actions were constitutionally unlawful, so too should this Court find that there is no law which would have given Officer Wilson's notice that his conduct was constitutionally unlawful.

Mwimanzi's reliance on *Bell v. Wolfish*, 441 U.S. 520 (1979), *Rudder v. Williams*, 666 F.3d 790 (D.C. Cir. 2012), and *Johnson v. D.C.*, 528 F.3d 969 (D.C. Cir. 2008), is similarly unavailing. *Bell* was a class action lawsuit that challenged numerous conditions of confinement

and practices at a custodial facility designed primarily to house pretrial detainees.  *Bell*, 441 U.S. at 523.  The inmates at the facility were required to expose their body cavities for visual inspection as part of a strip search after every contact visit with a person from outside of the facility.  *Id*. at 558.  The Supreme Court concluded that the cavity searches did not violate the Fourth Amendment because the searches were reasonable and the Fourth Amendment only prohibits unreasonable searches.  *Id*.  Because Mwimanzi's search was reasonable just as the search in *Bell*, Officer Wilson cannot be held liable under the Fourth Amendment.

*Rudder* also involved claims of excessive force and the case was resolved on a motion to dismiss; not at the summary judgment stage.  *Rudder*, 666 U.S. at 792.  The *Rudder* plaintiffs stepped in the street to greet family members who were participating in a parade.  MPD officers ordered them out of the street, and allegedly used force against them as they tried to comply with police orders.  The conduct complained of included a shove, use of batons, and forcing plaintiffs, including the juveniles, to the ground.  *Id*.  The *Rudder* court concluded that the plaintiffs alleged enough facts to withstand dismissal of their claim that police officers acted with a degree of force unjustified by the circumstances.  *Id.* at 795.  Here, this case is at the summary judgment stage, not the motion to dismiss stage.  And discovery has ended.  Officer Wilson searched Mwimanzi for drugs and drug paraphernalia as identified on the Search Warrant he was executing and as he believed was allowed by MPD General Order 702.03.  Defs.' SUMF ¶ 20.  And "in Officer Wilson's experience, [the groin area is] where a lot of drug dealers and users hide things."  Defs.' SUMF ¶ 18.  Despite Mwimanzi's allegations about the amount of force Officer Wilson exerted during the search, there is no evidence that Officer Wilson used the type of force against Mwimanzi as he alleges or as did the officers in *Rudder*.  While the Court cannot weigh credibility at the summary judgment stage, the Court need not accept allegations not supported,

or contradicted, by evidence.  *See Campbell v. District of Columbia*, 245 F. Supp. 3d 78 (D.D.C.

2017).  In *Campbell*, the plaintiff argued probable cause did not exist for his arrest because he

did not know the officers were police.  But according to the *Campbell* court, "the video record

unmistakably contradicts his account… because it shows both officers outfitted in black tactical

vests with 'POLICE' in bold, white letters on the front and back."  *Id.* at 88.  And as the

*Campbell* court clearly recognized, "[a] defendant must first raise the defense of qualified

immunity when facing a § 1983 claim, but once asserted, "the burden of proof . . . falls to the

plaintiff to show that the official is not entitled to qualified immunity."  *Id., citing Winder v.

Erste*, 905 F. Supp. 2d 19, 28 (D.D.C. 2012) (internal citation omitted).   Here, Mwimanzi has

not met his burden of proof to show that Officer Wilson is not entitled to qualified immunity, and

the Court should look at the BWC footage in the light of the footage itself.

As Officer Wilson's BWC footage begins, an officer says Mr. Barrett had something on

him.  *See* BWC footage, Defs.' Ex. D.  And when Officer Wilson told Mwimanzi to stand,

Mwimanzi says, even before the search began, "you want to handle me too."  *Id.*  Officer Wilson

asks the other officers whether Mwimanzi has been searched but the use of the term "a Seijo

search" is not clear.  *Id.*  Indeed, in response, Officer Wilson says a "basic search?," which

dovetails into Officer Wilson's belief that Mwimanzi had only been frisked or patted down.

Defs.' SUMF ¶ 17.  And although Mwimanzi claims Officer Wilson told him to spread his legs

farther than he had been told before by another officer, the BWC footage shows that Officer

Wilson never said "spread your legs."  Instead, he says "spread your feet."  *See* Pl.'s Brief at 27;

Defs.' Resp. to Pl.'s SDMF No. 18-19.  And the video shows that even when Officer Wilson is

not touching Mwimanzi, he says "you want to fondle me buddy," and there is no showing that

Mwimanzi "gasped" as he claims.  *See* Pl.'s Brief at 27; BWC footage, Defs.' Ex. D.  There is no

showing that the alleged force used on Mwimanzi was done as he complied with the search as did the *Rudder* plaintiffs.  Nor is there a showing that probing Mwimanzi's groin area for drugs was against police practices or the manner in which it occurred was unlawful.

In *Johnson*, the conduct complained of is in stark contrast to Mwimanzi's allegations. The *Johnson* plaintiff was an off-duty police officer who, while on the ground surrendering, allegedly was repeatedly kicked in the groin by an on-duty police officer.  *Johnson*, 528 F.3d at 969.  The *Johnson* court was convinced that a reasonable officer would not have repeatedly kicked a surrendering suspect in the groin and that the repeated kicks were a serious intrusion on his Fourth Amendment interests.  *Id*.  Here, there is no showing that Officer Wilson repeatedly pressed Mwimanzi's testicles as Mwimanzi complied with the search or that Officer Wilson had completed searching Mwimanzi for drugs but repeatedly pressed on his groin area.  BWC footage, Defs.' Ex. D.  Therefore, *Johnson* supports Officer Wilson's entitlement to summary judgment.

Mwimanzi's reliance on *Dormu v. District of Columbia*, 795 F. Supp.2d 7 (D.D.C. 2011), to support Officer Wilson's liability is equally misplaced.  The *Dormu* court reasoned that "the relevant inquiry [for qualified immunity] is whether state of law at the time of incident gave officer fair warning that his alleged misconduct was unconstitutional."  *Id.* at 23.  And "district court[s] look[] to cases from Supreme Court, District of Columbia Circuit, and other courts for principles exhibiting consensus view."  *Id.*  The *Dormu* plaintiff was a vascular surgeon who sued the officer alleging that the handcuffs placed on him by the officer was excessively tight. And despite his complaints that the handcuffs were too tight and that he was experiencing continuing pain and numbness in his right wrist, the officer ignored his complaints.  *Id.* at 16. The *Dormu* plaintiff received surgery for the pain and numbness, and had to stop performing

surgeries that required a certain level of muscle strength. *Id.* at 22-23. The court found that given the benign crime for which the *Dormu* plaintiff was arrested, and the nature of his injuries, a jury needed to determine whether the officer had a legitimate reason for maintaining the handcuffs as they were and could find that the officer used excessive force by the handcuffing the plaintiff. *Id.* at 23. And while the *Dormu* court reasoned that the severity of the injury the plaintiff suffered was relevant when deciding whether the force used was excessive, it cited *Wardlaw v. Pickett*, 1 F.3d 1297, 1304 n. 7 (D.C. Cir. 1993) in its decision, which held that "the severity of the injury 'is not by itself the basis for deciding whether the force used was excessive….'" *See Dormu*, 795 F.Supp.2d at 22. Here, unlike the *Dormu* plaintiff, Mwimanzi did not tell Officer Wilson that he was in pain. And in the BWC footage, not once does Mwimanzi say he is in pain or that Officer Wilson has hurt him. Indeed, he expressed no physical pain arising from the search. *See* BWC footage, Defs.' Ex. D. The alleged mental distress injuries Mwimanzi claims now to have sustained is not supported by competent evidence. *Id.* Rather, Mwimanzi's complaints are self-serving and do not show that Officer Wilson used excessive force when probing Mwimanzi's groin for drugs and contraband. *See* Pl.'s Ex. C at 89:18-20. And that Mwimanzi visits his friend Whitehead less or that other friends chided him based on his reaction during the search is not enough to show Officer Wilson's actions were excessive. And as the *Dormu* court recognized, "[a]lmost every Court of Appeals has held that overly tight handcuffing can constitute excessive force, where the handcuffing has resulted in injury or where an individual complains about the overly-tight cuffing. *Dormu,* 795 F.Supp.2d at 23, citing *Howard v. Kansas City Police Dep't,* 570 F.3d 984, 991 (8th Cir.2009) (finding it clearly established that the Fourth Amendment prohibited officers from unreasonably ignoring complaints that unduly tight handcuffs were causing more than minor

injury.)  But Mwimanzi has pointed to no decisions from the Supreme Court, Court of Appeals, or local law which has found that probing a man's groin in search of drugs was unreasonably excessive.  *See* Pl.'s Brief.

Mwimanzi's reliance on Judge Amy Berman Jackson's 99-page detailed opinion read from the bench in *Horse v. District of Columbia*, 17-cv-1216 (D.D.C. Sept. 27, 2019), to support Officer Wilson's constitutional liability, is also misplaced.  *See* Pl.'s Brief at 34.  *First,* the *Horse* decision was at the dismissal stage, not summary judgment stage like this case.  *Second,* the claims in the two cases differ substantially.  The *Horse* plaintiffs alleged that a police officer pushed his finger into a detainee's rectum for several seconds and subjected other detainees to similar treatment.  *See* Pl.'s Ex. G at 74.  Here, Mwimanzi alleges that Officer Wilson inappropriately fondled is groin area looking for drugs.  *See* Pl.'s SDMF No. 28.  *Finally,* when reading her order to the parties, Judge Berman Jackson cautioned the plaintiffs, stating:

> "…plaintiffs, especially plaintiff Horse, should carefully evaluate the strength of the evidence on these counts, given the fact that whatever took place, and it took place in an instant, and there's little in the video to support the allegations that the officer placed his hand inside the detainee's clothes, nor does the video support the original description of this event as involving a group of men lined up.  So this ruling is without prejudice to the renewal of the motion at the close of discovery.  And even if the claims survive that round of briefing, it is worth considering that it is not clear how concerned a jury will be about these very brief encounters."

*Id.*  Similarly, here, there is no evidence from the BWC footage that Officer Wilson told Mwimanzi to "spread his legs," that he "rubbed [Mwimanzi's] testicles against [his] legs," and "use[d] the power of his hands to squeeze" each testicle against [Mwimani's] leg, causing [him] to feel intense pain in his groin radiating to his abdomen."  *See* BWC footage, Defs.' Ex. D.  For the same reasons the *Horse* plaintiffs were cautioned by the judge, this Court should not submit this claim to a jury based on the record evidence which does not support it.

*Dickey v. United States*, 174 F. Supp. 3d 366, 370–71 (D.D.C. 2016) and *Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 120, 125–26 (D.D.C. 2012), also do not support constitutional liability against Officer Wilson.  *See* Pl.'s Brief at 34.  *First,* the courts in both of these cases denied a motion to dismiss; the cases had not reached the summary judgment stage and the parties were allowed to engage in discovery.  Here, discovery is closed and on summary judgment, Mwimanzi is required to put up evidence to support denial of summary judgment. *Second,* the facts here, pale in comparison to the facts in both *Dickey* and *Grissom*.  In *Dickey,* the plaintiff alleged the officer searched him six separate times while in public and fondled his genitals and penis while in a public parking garage in the presence of police officers and civilian bystanders who worked in the same building where the plaintiff was employed.  *Dickey*, 173 F.Supp.3d at 373.  The *Grissom* case involved allegations about a warrantless search of a patron using a magnetometer to rub the plaintiff's genitals and the continuation of the search even after she asked the officers to stop.  *Grissom*, 853 F.Supp.2d at 125-126.  Here, Mwimamzi alleges Officer Wilson searched him once in the private home of his friend and inappropriately probed his groin area; but he never told Officer Wilson to stop because he was in pain.  *See* SUMF PPSJ at 12.  *Finally,* Mwimanzi has not shown that either the *Dickey* or *Grissom* courts denied the officers qualified immunity at the summary judgment stage and that the decisions were upheld on appeal.  *See* Pl.'s Brief.  For these reasons, Mwimanzi cannot show that the claims for which he seeks relief were clearly established as a matter of law based on either the *Dickey* or *Grissom* decisions.

Mwimanzi's argument that Officer Wilson's search was excessive and otherwise unlawful because he did not use the "continuous sweeping motion" the court approved in *United States v. Rodney*, 956 F.2d 295, 298 (D.C. Cir. 1992), or the type of search approved in *United*

*States v. Smith*, 373 F. Supp. 3d Supp. 3d 223 (D.D.C. 2019), is confusing at best and simply

wrong.  Contrary to Mwimanzi's belief, these cases support judgment in Officer Wilson's favor

not against him.  *See* Pl.'s Brief at 38.  Both cases are criminal actions filed by defendants

against the federal government; each seeking to suppress evidence found by the officers.  Both

courts were tasked with determining whether consent was given for the search and if so, whether

the search was within the reasonable bounds of the consent given by the plaintiff.  Each found

that the defendants consented to at least a pat down search, and drugs were found during the

searches.  *Rodney*, 956 F.2d at 297; *Smith,* 373 F.Supp.3d at 227.  And as recognized by the

*Rodney* court, "[t]he scope of a search is generally defined by its expressed object."  *Id*. at 297,

*citing Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991).   The

*Rodney* court reasoned that given the search was for drugs, "[d]ealers frequently hide drugs near

their genitals."  *Id., citing United States v. Broxton*, 926 F.2d 1180, 1181 (D.C.Cir.1991) (per

curiam); *United States v. Wright*, 924 F.2d 545, 546 (4th Cir.1991).  And while the *Smith* court

found that Officer Smith "did squeeze and prod [the plaintiff's] inner-thigh area over [the

plaintiff's]…the search did not involve the penetration or prodding of body cavities."  *See Smith,*

373 F.Supp.3d at 246-247.  *Cf. Rodney*, 956 F.2d at 298.  Here, as explained by Officer Wilson,

he began his search of Mwimanzi's groin area for drugs because, in his experience, that is where

drug dealers and users hide drugs.  Defs.' SUMF ¶ 18.  And at deposition, Officer Wilson

testified that he took a couple of sweeps in Mwimanzi's groin area searching for drugs.  *See*

SUMF PPSJ at ¶ 13.  And Mwimanzi does not allege that Officer Wilson penetrated or otherwise

prodded his body cavities.  *See* record.  Because Officer Wilson's search of Mwimanzi was no

more intrusive than the manner in which the officers searched in *Rodney* and *Smith,* Mwimanzi

has not shown that Officer Wilson should have known that the manner in which he searched

Mwimanzi was unlawful based on clearly established law as shown by *Rodney or Smith*.  On this record, judgment should be granted in Officer Wilson's favor as he is entitled to qualified immunity for the search and manner of the search he performed on Mwimanzi.

### B.     A Mistake of Law By Officer Wilson Still Supports Qualified Immunity.

Even if there were Supreme Court and Court of Appeals cases similar to the facts here— which there are not—Officer Wilson's good faith belief that his actions were lawful under MPD Order 702.03 entitles him to qualified immunity even if he were mistaken.  As the Supreme Court in *City of Tahlequah* explained, qualified immunity "protects all but the plainly incompetent or those who *knowingly* violate the law."  *City of Tahlequah* at No. 20-1668, 2021 WL 4822664, at *1, emphasis added, *citing Wesby*, 583 U. S. at ___, (slip op., at 13–14) (quoting *Malley* v. *Briggs*, 475 U. S. 335, 341 (1986)).  Although Mwimanzi used Officer Wilson's testimony that he based his decision to search him on the search warrant, the briefing, and MPD General Order 702.03, Mwimanzi ignores Officer Wilson's good faith belief that his conduct was lawful.  *See* Brief at 2; *see* Pl.'s response SUMF ¶ 20.  In conducting the qualified immunity analysis, courts acknowledge "that reasonable mistakes can be made as to the legal constraints on particular police conduct."  *See Curley v. Klem,* 499 F.3d 199 (3d Cir. 2007), *citing Saucier v. Katz*, 533 U.S. 194, 205 (2001).  Indeed, "qualified immunity is an objective question to be decided by the court as a matter of law." *Carswell,* 381 F.3d at 242 (citing *Doe,* 361 F.3d at 238).   The *Wesby* court concluded that officers were entitled to qualified immunity because they reasonably but mistakenly concluded that their conduct was lawful. *See Wesby,* 138 S.Ct. at 582, *citing Anderson v. Creighton,* 483 U.S. 635, 640, 641 (1987) ("[T]he officers [were] entitled to qualified immunity because, given 'the circumstances with which [they] w[ere] confronted,' they 'reasonably but mistakenly conclude[d] that probable

cause [wa]s present.'"  Therefore, even if Officer Wilson was mistaken that his search of Mwimanzi was lawful based on the search warrant and MPD General Order 702.03, he would still be entitled to qualified immunity.

### III.    Mwimanzi's Battery Claim Against Officer Wilson and the District Fails as Officer Wilson's Actions Were Privileged.

Other than Mwimanzi's argument that Officer Wilson's actions were unreasonable and he is not entitled to a privilege for his actions, the record is devoid of evidence showing that Officer Wilson's conduct was not privileged.  *See* Pl.'s Brief.  *First,* "[a]ny defenses available to individual police officers of [the] District of Columbia in suit for … battery are also available to [the] District if it is party to suit."  *See Wade v. District of Columbia,* 310 A.2d 857, 862 (D.C. 1973).  Because the District is a party, it too is entitled to dismissal based on Officer Wilson's asserted privilege.  *See* Compl. [1]; Answer [4].  *Second,* Officer Wilson has repeatedly shown that he searched Mwimanzi because he believed the search was authorized by the search warrant and MPD General Order 702.03.  *See* Defs.' SUMF ¶ 20.  *See also Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1985) ("It is well established that a police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary."  And "the test for qualified privilege in a[] … battery suit is both subjective and objective:  the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation."  *See Scales v. District of Columbia,* 973 A.2d 722, 730 (D.C. 2009).  *See also Wade*, 210 A.2d at 862 (The qualified privilege defense only requires proof of a good faith and reasonable belief that one's conduct is lawful.)  *See Wade*, 210 A.2d at 862.  Here, Officer Wilson searched Mwimanzi's groin area for drugs that were identified in the search warrant that could be secreted

on his person and he searched there because "in [his] experience, that's where a lot of drug

dealers and users hide things."  Defs.' SUMF ¶ 18.  And according to Officer Wilson, he

believed the search was lawful under MPD General Order 702.03.  Defs.' SUMF ¶ 20.  Because

any reasonable officer in Officer Wilson's position, faced with the same set of circumstances,

would subjectively and objectively believe that the search for drugs on Mwimanzi's person was

lawful, he is entitled to qualified privilege for the battery claim.  And the District is entitled to

the same defense.  Therefore, Mwimanzi's battery claim should fail against these Defendants.

**IV.    Mwimanzi Is Not Entitled To Partial Summary Judgment On His Proposed Claim of Municipal Liability Against the District under 42 U.S.C. § 1983.**

Mwimanzi seeks summary judgment against the District for municipal liability under

42 U.S.C. § 1983.  *See* Pl.'s Mot. to Amend; Pl.'s Brief at 10-24.  But municipal liability under

§ 1983 is severely limited and does not allow for *respondeat superior* liability.  *See Monell v.*

*New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  As explained in *Monell*, "a

local government may not be sued under § 1983 for an injury inflicted solely by its employees

or agents.  Instead, it is when execution of a government's policy or custom … inflicts the

injury that the government as an entity is responsible under § 1983."  *Monell,* 436 U.S. at 694.

Thus, to proceed against a municipality under § 1983, the plaintiff must identify a municipal

policy, custom, or practice that *caused* the plaintiff's alleged constitutional injury.  *See Board*

*of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *see also*

*Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010), emphasis added.  Indeed, to

hold the District liable for constitutional violations, Mwimanzi must prove either (1) "the

explicit setting of a policy by the government that violates the Constitution," (2) "[t]he action

of a policy maker with the government," (3) "the adoption through a knowing failure to act by

a policy maker of actions by his subordinates that are so consistent that they have become

custom," or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *see also Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014). Moreover, Mwimanzi must point to "specific incidents that plausibly show a custom or pattern of behavior." *Wells v. Hense*, 235 F. Supp. 3d 1, 12 (D.D.C. 2017) (quoting *Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 87 (D.D.C. 2016)). The Supreme Court has instructed that "at the very least there must be an *affirmative* link between the policy and the particular constitutional violation alleged." *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985), emphasis added. Stated otherwise, the municipal policy, practice, or custom must be the "moving force" behind the alleged constitutional injury. *See Monell,* 436 U.S. at 658. Mwimanzi has not met his burden to show entitlement to partial summary judgment as to his facial or "as applied" challenge to D.C. Code § 23-524(g).

A.   <u>**Mwimanzi's Facial Challenge to D.C. Code § 23-524(g) Fails.**</u>

Here, Mwimanzi's facial challenge to § 23-524(g) should be rejected as the statute is not unconstitutional on its face. *See* Pl.'s Brief at 10-13. According to Mwimanzi, this statute authorizes searches based on "[a]n individual's mere presence in a place subject to a search warrant" and does not justify searching that individual. *Id.* Mwimanzi's framing of his argument is misleading. In the context of Mwimanzi's facial challenge of the statute as violative of the Fourth Amendment, "the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). *See also* Pl.'s Brief at 13, citing *Patel.* But Mwimanzi's mischaracterization of the statute, which is already limited in its scope and which clearly meets

the requirements of the Fourth Amendment, should not be accepted and is not enough to

support municipal liability.  Crucially, the statute permits searches "to the extent reasonably

necessary to find property enumerated in the warrant."  *See* § 23-524(g).  Indeed, § 23-524(g)

reads:

> An officer executing a warrant directing a search of premises or a vehicle may
> search any person therein (1) to the extent *reasonably* necessary to protect
> himself or others from the use of any weapon which may be concealed upon
> the person, or (2) to the extent *reasonably* necessary to find property
> enumerated in the warrant which may be concealed upon the person.

Emphasis added.  This explicit "reasonableness" requirement perfectly tracks the requirements

of the Fourth Amendment, which prohibits only "unreasonable" searches and seizures, not

reasonable searches.  U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 19 (1968)

("[T]he central inquiry under the Fourth Amendment [is] the reasonableness in all the

circumstances of the particular governmental invasion of a citizen's personal security.").

While it is true that "a warrant to search a place cannot normally be construed to

authorize a search of each individual in that place," Pl.'s Brief at 15 (quoting *Ybarra v. Illinois*,

444 U.S. 85, 92 n.4 (1979)), that principle does not mean that such a warrant can *never* authorize

searches of individuals at that location.  In *Ybarra*, the Supreme Court concluded that the police

violated Ybarra's Fourth Amendment rights by searching him without a warrant while he was

present in a bar the police did have a warrant to search, and the search warrant:

> did not allege that the bar was frequented by persons illegally
> purchasing drugs [or] state that the informant had ever seen a patron
> of the tavern purchases drugs from … any … person … . In short,
> the agents knew nothing in particular about Ybarra, except that he
> was present … in a public tavern at a time when the police had
> reason to believe that the bartender would have heroin for sale.

444 U.S. at 90–91.  After *Ybarra*, "the Court drew back somewhat from the requirement that

there be suspicion 'directed at the person' who suffers the intrusion before police may intrude on

the rights of an individual found on the premises to be searched." *See Germany v. United States*, 984 A.2d 1217, 1224 (D.C. 2009) (citing *Michigan v. Summers*, 452 U.S. 692 (1981), *Muehler v. Mena*, 544 U.S. 93 (2005), and *Los Angeles County v. Rettele*, 550 U.S. 609 (2007)).  In *Washington v. District of Columbia*, 685 F. Supp. 264, 276 (D.D.C. 1988), the court distinguished *Ybarra* and upheld a search of an individual despite the fact that he was not named in the search warrant because "[i]t was … reasonable for the … officers to conclude they had probable cause to believe that the objects named in the search warrant were on [his] person." Analogously, the D.C. Circuit in *United States v. Holder*, 990 F.2d 1327 (D.C. Cir. 1993), upheld the arrest of an individual present in a location as the police were executing a warrant to search it, distinguishing *Ybarra* in that while the search that was struck down in *Ybarra* "occurred in a public place," and "Ybarra was simply one patron among many," "access to a private apartment, on the other hand, is presumably limited, and thus a person's admission to the apartment normally would raise a stronger inference of connection to the activities conducted within." *Id*. at 1329.  Additionally, the *Holder* court noted that *Ybarra* itself "held open the possibility that mere presence in some public places could suggest involvement in criminal activity if criminal activity pervaded the public place." *Id*. at 1329 n.2.

Mwimanzi's rejection of the decision in *United States v. Reid*, 997 F.2d 1576 (D.C. Cir. 1993), in which an individual leaving a private residence was frisked by police who had arrived with a warrant to search that residence, is misplaced.  Pl.'s Brief at 18.  The *Reid* court *upheld* the search at issue, holding that it was justified by the individual's "proximity to the premises to be searched," and the consequent "reasonableness of [the officer's] expressed concern about his safety and that of his colleagues." *Id*.  The *Reid* court plainly recognized that "[c]ommon sense suggests that there is a much greater likelihood that a person found in a small private residence

containing drugs will be involved in the drug activity occurring there than [was the case in *Ybarra*]. Police officers are not blind to these realities and we should not encourage them to be." *Id*. at 1578–79. Likewise, Mwimanzi's rejection of the decision in *Walker v. United States*, 327 F.2d 597 (D.C. Cir. 1963), and mischaracterization of the decision in *United States v. Branch*, 545 F.2d 177 (D.C. Cir. 1976), is similarly unavailing. *See* Pl.'s Brief at 18. In *Walker*, police arriving at a residence to search it pursuant to a warrant saw one individual present passing items to another, and subsequently searched that individual. 327 F.2d at 598. Although the warrant did not explicitly encompass a search of that individual, the *Walker* court upheld the search, while noting that it was not holding that a warrant to search a location *always* amounts to justification to search persons present. 327 F.2d at 600. And it rejected the individual's argument that the government could not search him under those circumstances because it "would be to suggest that a warrant to search premises may be frustrated by the device of simply picking up the guilty object and holding it in one's hand. No constitutional or statutory limitations that we know of require any such result." *Id*. And in *Branch*, the D.C. Circuit emphatically did not endorse "[t]he concept that a premises search warrant does not embrace personal searches … ." 545 F. 2d at 181. Instead, the *Branch* court ultimately held that "while such personal items as the shoulder bag under consideration may, in some circumstances, be found to be within the ambit of a premises search warrant, we are here persuaded otherwise." *Id*. at 182. Essential to the *Branch* court's decision was the fact that the individual "was not in the apartment when the search began, nor was he offered the opportunity to leave immediately upon discovery of the search in progress. *Id*. at 181 (noting the individual called the residence while the police were searching it, and a police officer without revealing his identity invited the individual to come to the residence).

The Fourth Amendment requires that a search be "reasonable," and in some cases, under the totality of the circumstances, a search of an individual present in a location the police are authorized to search is reasonable. The District's statute fits perfectly within this constitutional framework because it only authorizes such searches as "reasonably necessary." *See* § 23-524(g). In other words, a search is not "reasonably necessary to find property enumerated in the warrant" if that search would not have a reasonable basis under the Fourth Amendment, properly justified by the circumstances as outlined in the warrant and on the scene. *See United States v. Miller*, 298 A.2d 34, 36 n.6 (D.C. 1972) ("There are obviously reasonable limitations on [D.C. Code § 23-524(g)].") (citation omitted). In *Ybarra*, the police did not have such a basis because "[n]owhere, in fact, did the complaint even mention the patrons of the [bar]," and "the agents knew nothing in particular about Ybarra, except that he was present … ." 444 U.S. at 90–91. And in *Branch*, the individual searched "was not in the apartment when the search began." 545 F.2d at 182. But it does not follow that it will *never* be unreasonable to search individuals "to the extent reasonably necessary" when police execute a search warrant for a particular location. As the *Reid* court put it, "[i]t does not stretch the imagination too much to conjure up a fact situation where a bar patron might be a reasonable target for a 'stop and frisk' notwithstanding the *Ybarra* precedent … ." 997 F.2d at 1597. And Mwimanzi must not only show that § 23-524(g) is unconstitutional on its face, he most also show that it was the moving force behind his constitutional injuries. *See Monell,* 436 U.S. at 658. Because Mwimanzi has not met his burden to show that the statute as written is unconstitutional on its face and that it was the moving force behind the violation of his constitutional rights (as argued more in detail below), his motion for partial summary judgment should be denied.

**B.**   **Mwimanzi's "As Applied" Argument Fails.**

Other than argue that the statute as applied to him was unconstitutional, Mwimanzi has not met his burden of proof supporting summary judgment against the District. *First,* Mwimanzi has not shown that § 23-524(g) was applied to him, let alone that "as applied" it was likewise unconstitutional.  In fact, at deposition, Officer Wilson testified he believed his actions were supported by MPD General Order 702.03, the search warrant, and the briefing he attended about the warrant; he did not identify § 23-524(g) as a basis for his search.  *See* SUMF PPSJ No. 8. And nothing in Mwimanzi's motion shows otherwise.  *See* Pl.'s Brief.  Because Mwimanzi has not presented facts showing that Officer Wilson relied on § 23-524(g) when he conducted his search, he cannot show that this statute was the moving force that led to his injuries.  Thus, his motion for partial summary judgment is infirm and denial is appropriate.

*Second, Monell* makes clear that a municipality cannot be held liable under a theory of *respondeat superior* liability.  Instead, its customs, practice and policies must be the moving force of the constitutional injury or a final policymaker must have acted with deliberate indifference to the constitutional rights of others similarly situated.  *Monell,* 436 U.S. at 694. But Mwimanzi tries to hold the District liable only for the actions taken by Officer Wilson on January 15, 2019; not for any custom, practice or policy that was the moving force of his injuries.  *See* Pl.'s Brief.  Indeed, Mwimanzi has not presented evidence of any other unconstitutional acts of MPD officers which supports a custom, practice or policy of unconstitutional behavior.  Nor has he identified any final policymaker who was indifferent to the constitutional rights of others.  *See* Pl.'s Brief.  Instead, Mwimanzi merely argues that Officer Wilson searched him in violation of his constitutional rights.  *Id.*  As *Monell* makes clear, a municipality cannot be held liable under *respondeat superior* principles.  *Monell,* 436 U.S. at

694.  Moreover, Mwimanzi even concedes that another officer merely frisked him and he did not complain about that officer's actions.  *Id.* at 4, 11.  *See also* SUMF ¶ 10; SUMF PPSJ ¶ 15. Because Mwimanzi has not shown that the January 15, 2019 search by Officer Wilson amounted to a pattern or policy of unconstitutional behavior, or identified enough other incidents to support the existence of a custom, practice or policy of unconstitutional conduct, his motion for partial summary judgment fails.

 *Finally,* even if § 23-524(g) was applied to the January 15, 2019 search, Mwimanzi has not shown that it was unconstitutionally applied to him.  Section 23-534(g) describes when an officer is authorized to search an individual during the execution of a search warrant.  And the statute itself contains a key limitation consistent with the Fourth Amendment:  it authorizes *reasonable* searches only for property "which may be concealed upon the person."  *See* § 23-524(g); *see also Miller*, 298 A.2d at 36 n.6 ("A police officer could not under this provision search persons to locate a stolen television …. However, an officer could under this provision search persons to locate narcotics which were enumerated in the search warrant and which could be secreted on a person.") (citation omitted).  That condition is easily satisfied here, as Mwimanzi acknowledges.  *See* Pl.'s SUMF No. 3 (Defendant Wilson conducted the search for drugs and drug paraphernalia on  Mwimanzi); *see also Thomas v. United States*, 352 A.2d 390, 391 (D.C. 1976) ("The warrant here authorized the police to search for narcotics, which clearly are easily concealable upon the person. The possibility that evidence may be lost or destroyed has long been considered an exigent circumstance allowing a warrantless search.").

 In *White v. United States*, 512 A.2d 283 (D.C. 1986), an individual was searched under a warrant naming a private residence to be searched for narcotics.  The D.C. Court of Appeals merely remanded the case for further factual findings, suggesting that factual circumstances in

that case may very well have indicated that the officer's conduct was lawful.  *White*, 512 A.2d at

287.  Here, while Mwimanzi was not identified by name, the affidavit supporting the warrant

repeatedly and specifically identifies multiple drug users and drug dealers as being present in the

location to be searched, with several examples of such activity within hours of the warrant's

issuance. [WARRANT AFF] at *3–4.  *See also* SUMF PPSJ ¶¶ 1, 2, 4, 5, 6.  And in *White,*

which was remanded, the warrant only "indicated that a woman named "Bunny" was selling

heroin from the house, but it made no mention of anyone else."  512 A.2d at 286 n.3.  Indications

that multiple unidentified individuals actively participating in drug trafficking activity are

commonly present in the residence supports the reasonableness of a search of persons who are

ultimately found within that residence once a warrant targeting the effects of drug traffickers is

executed upon that residence.  *Germany*, 984 A.2d at 1227–28 ("[W]hen a magistrate has

determined that a residence is the probable site of drug trafficking, the occupants of that

residence are very likely to be involved in drug trafficking.") (quoting *State v. Guy*, 492 N.W. 2d

311, 316 (Wis. 1992)).  As a result, the totality of the allegations in the affidavit here provide the

necessary context and support for a search of particular individuals discovered within the

residence.  *Cf. Holder*, 990 F.2d at 1329 (noting that *Ybarra* rejected a search in which the

warrant only identified others "independently suspected of criminal activity," rather than cases in

which probable cause to suspect one individual also applies to another).  Because Mwimanzi has

not shown that § 23-524(g) was applied to him, or even if applied, was applied unconstitutionally

as numerous individuals were identified in the warrant, albeit not by name, his motion for

summary judgment is fatal and should be denied.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment, and deny Mwimanzi's motion for partial summary judgment.

Date:  October 25, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

*/s/Stephanie M. Corcoran*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 47858
Senior Assistant Attorney General
STEPHANIE M. CORCORAN
D.C. Bar No. 1510874
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
(202) 724-6600; (202) 615-3910 (direct)
(202) 759-0825; (202) 741-0595 (fax)
kerslyn.featherstone@dc.gov;
stephanie.corcoran@dc.gov

*Counsel for Defendants Officer Joshua Wilson and
the District of Columbia*