**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MBALAMINWE MWIMANZI,

                         Plaintiff,

      v.

JOSHUA WILSON, et al.,

                         Defendants.

No. 20-cv-00079 (CRC)

**PLAINTIFF'S REPLY IN SUPPORT OF HIS CONTINGENT MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Mr. Mwimanzi's contingent motion for partial summary judgment can be resolved on straightforward grounds: where a search warrant "particularly describ[es]," U.S. Const. amend. IV., only a place, the warrant does not automatically authorize a search of the people inside. D.C. Code § 23-524(g) and its parallel regulation, Metropolitan Police Department (MPD) General Order 702.03(VII)(F)(8)(f),[1] purport to authorize such searches and therefore are facially unconstitutional to the extent they do, and unconstitutional in their application to Mr. Mwimanzi.

During the deposition of Officer Wilson, Mr. Mwimanzi learned that the invasive search that he endured on January 15, 2019—a search involving the forceful pressing of his anus and the aggressive manipulation of his testicles—was initiated only because Mr. Mwimanzi happened to be present in an apartment subject to a search warrant for drugs. *See* ECF 32-5 (Ex. C to Pl.'s Contingent Mot. for Partial Summary Judgment ("Pl.'s MSJ"), Wilson Depo. Tr.) 39:4–11, 40:4– 7. Officer Wilson initiated the search in reliance on both D.C. Code § 23-524(g) and the parallel

---

[1] https://go.mpdconline.com/GO/GO_702_03.pdf

MPD General Order. ECF 24-5, (Ex. D to Pl.'s Mot. To Amend, Def. District of Columbia's Resp. to Pl.'s Interrogs.) 3–4 ("[T]he search conducted by Officer Wilson of Mr. Mwimanzi was justified under Metropolitan Police Department General Order 702.03 (DC Code Title 23 § 23-524)."); ECF 32-7, (Ex. E to Pl.'s MSJ, Def. Wilson Resp. to Pl.'s Interrogs.) 3 ("[T]he search I conducted was justified under Metropolitan Police Department General Order 702.03 (DC Code Title 23 § 23-524).").

Mr. Mwimanzi sought to amend the Complaint to add a claim, solely against Defendant District of Columbia, that asserted a facial and as-applied challenge to D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f), the provisions that led Officer Wilson to initiate the search. *See* ECF 24-2 (Ex. A to Pl.'s Mot. to Amend, Proposed Amended Compl.) ¶ 66–70; Prayer for Relief ¶ (b). Defendant District of Columbia opposed Mr. Mwimanzi's motion for leave to amend his Complaint on futility grounds but failed to identify any case where a court upheld a search of a person based solely on their presence on premises subject to a search warrant. *See generally* ECF 26 (Def.'s Opp'n. to Pl.'s Mot. to Amend). Now, in opposition to Mr. Mwimazi's contingent motion for partial summary judgment, the District has essentially repeated the arguments made in its opposition to Mr. Mwimanzi's motion to amend. *Compare* ECF 26 (Def.'s Opp'n. to Pl.'s Mot. to Amend) at 4–10 *with* ECF 35 (Defs.' Opp'n. to Pl.' MSJ) at 17–25. The District's only new argument is that Mr. Mwimanzi has not established municipal liability, a contention that rests primarily on the assertion that he has failed to show that a District policy was the moving force behind the search. Yet this point is easily refuted by several concessions made by Defendants in their discovery responses and briefing which establish that Officer Wilson searched Mr. Mwimanzi because of D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f).

The remainder of the District's arguments remain unpersuasive. Contrary to the District's assertions, D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) are facially unconstitutional in that they permit searches of individuals based exclusively on their presence in a residence subject to a search warrant for items concealable on an individual's person. That D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) authorize such searches is demonstrated by the provisions' plain language, case law, and the way MPD officers understand the provisions. The Fourth Amendment, however, does not authorize such searches. Searches of people must be predicated on a warrant or an exception to the warrant requirement. The Supreme Court and the D.C. Circuit have made clear that a warrant to search a residence does not encompass the people inside. Nor does presence in such a place, on its own, support any exceptions to the warrant requirement. The District offers no authorities that undercut these principles.

The District also cannot defeat Mr. Mwimanzi's as-applied challenge. As with its opposition to the motion to amend, the District's opposition to partial summary judgment fails to show that the warrant for Ms. Whitehead's home authorized the search of Mr. Mwimanzi, whom the warrant did not name or describe. And the other facts on which the District relies—the possibility that drugs can be concealed in individuals' clothing, Mr. Mwimanzi's location in a residence subject to a warrant, and the affidavit noting that the residence had been used for illegal drug transactions—do not satisfy any exception to the warrant requirement. Accordingly, Mr. Mwimanzi is entitled to summary judgment on his facial and as-applied challenges.

## ARGUMENT

### I.    The Facts Material To Mr. Mwimanzi's Partial Summary Judgment Motion Are Not in Dispute.

In this case, each side has moved for summary judgment, but on different claims. Because the District's opposition to Mr. Mwimanzi's motion sometimes conflates the two, it is worth

reviewing briefly what is at issue in each. Defendants Wilson and the District seek summary judgment on Mr. Mwimanzi's original Fourth Amendment and battery claims, which challenge the *scope and manner* of Officer Wilson's search of Mr. Mwimanzi. With respect to that motion, Mr. Mwimanzi's testimony about the excessive nature of Officer Wilson's search, and Officer Wilson's rejection of Mr. Mwimanzi's characterization, creates a material dispute of fact. *See Desmond v. Mukasey*, 530 F.3d 944, 964 (D.C. Cir. 2008) (recognizing that a plaintiff's own first-hand testimony can create a dispute of fact that defeats summary judgment).

Mr. Mwimanzi seeks summary judgment on a different claim—the one he seeks to add via his motion to amend—and here, the material facts are not in dispute. The proposed claim, which Mr. Mwimanzi asserts solely against Defendant District of Columbia, relates to Officer Wilson's decision to *initiate* his search of Mr. Mwimanzi, and so the only facts material to the claim involve the information Officer Wilson knew when making that decision. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time" of the officer's actions.). On that issue, the parties agree that Officer Wilson relied exclusively on Mr. Mwimanzi's presence in a residence subject to a warrant, the warrant itself, and the summary of the affidavit Officer Wilson received at the briefing prior to the search (which neither the District nor Officer Wilson suggest supplied him with any additional information beyond the affidavit's text). *See* ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 25 (relying on Mr. Mwimanzi's location and the facts related to it to justify the search); ECF 35-1 (Defs.' Resp. to Pl.'s SUMF) ¶¶ 8, 16, 17 (conceding that when asked at deposition, "So other than the information you had in the warrant, were there any other facts that led you to search Mr. Mwimanzi?", Officer Wilson testified, "No. Just the warrant.").

The District's attempt to conjure a dispute of material fact on these basic points does not succeed. First, the District is wrong as a matter of black-letter law that the Court cannot rely on the Defendants' concessions in their "unverified" Answer—specifically, concessions that Mr. Mwimanzi was not arrested on the night of the search, and that Officer Wilson did not seek Mr. Mwimanzi's consent before conducting the search. ECF 35-1 (Defs.' Resp. to Pl.'s SUMF) ¶¶ 6, 7.[2] The unverified nature of the Answer does not preclude the Court from considering it on summary judgment. *See U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 748 (D.C. Cir. 1998) (noting that an admission in an answer to a complaint "ordinarily . . . constitute[s] a binding judicial admission").

Second, Defendants dispute that Officer Wilson "knew he could not search Mr. Mwimanzi," ECF 35-1 (Defs.' Resp. to Pl.'s SUMF) ¶ 14; however, Mr. Mwimanzi never characterized Officer Wilson's state of mind as an undisputed fact, and, in any event, Officer Wilson's subjective beliefs are irrelevant to whether he had constitutional authority to initiate the search. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Third, Defendants purport to identify 18 facts that preclude summary judgment. However, the first seven of these facts largely summarize the contents of the affidavit and Plaintiff does not dispute the accuracy of Defendants' summary of the affidavit. *See* ECF 35-1 (Defs.' Statements of Undisputed Facts Which Preclude Partial Summary Judgment to Mwimanzi) ¶¶ 1–7. Six more contain uncontroversial and undisputed statements that either summarize the state of the record, *see id.* ¶¶ 16, 17, or concern the lead-up to and object of Officer Wilson's search, *see id.* ¶¶ 8, 9,

---

[2] Defendants filed their responses and replies to the several statements of facts filed in this case as ECF 35-1. Their response to Plaintiff's Statement of Undisputed Material Facts begins on page 31 of that document. Their Statement of Undisputed Facts Which Preclude Partial Summary Judgment to Mwimanzi, which is also discussed in this brief, begins on page 37 of ECF 35-1.

15, 18. Of the remaining five allegations, four involve assertions concerning the scope of Officer Wilson's search, *see id.* ¶¶ 10–13; these are irrelevant to Mr. Mwimanzi's summary judgment motion, which solely concerns whether Officer Wilson acted unconstitutionally in initiating the search in the first place. Finally, ¶ 14 states that "Officer Wilson relied on the Search Warrant, MPD General Order 702.03, and what he learned at the briefing he attended when he searched Mwimanzi," a statement that is true and undisputed, but incomplete. As Defendants concede elsewhere, and as is discussed below, in conducting the search of Mr. Mwimanzi, Officer Wilson also relied on D.C. Code § 23-524(g).

In sum, the facts material to Mr. Mwimanzi's motion are undisputed or undisputable, and therefore summary judgment is available.

## II.    The District is Liable Under § 1983 Because Its Official Policy Caused Mr. Mwimanzi's Injuries.

The District is liable for a constitutional tort committed by its employees if "a municipal policy was the moving force behind the constitutional violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (cleaned up). "There are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983"; the one identified by Mr. Mwimanzi is "the explicit setting of a policy by the government that violates the Constitution." *Id.*

The District contends (wrongly) that Mr. Mwimanzi failed to identify a municipal policy serving as a moving force behind the violation because Officer Wilson initiated his search of Mr. Mwimanzi based only on MPD General Order 702.03, not D.C. Code § 23-524(g). ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 23. Even if the District was correct that D.C. Code § 23-524(g) played no role in the search (a point on which, as discussed next, the District is wrong), an MPD General Order, like a statute, constitutes a District policy. *See Hawkins v. District of Columbia*, 923 F.

6

Supp. 2d 128, 135 (D.D.C. 2013) (holding that an MPD General Order constitutes a municipal "policy" for purposes of *Monell* liability); *Hawkins v. Boone*, 786 F. Supp. 2d 328, 337 (D.D.C. 2011) (holding that plaintiff stated a claim for municipal liability by alleging a constitutional violation arising from an MPD General Order and the implementation thereof); *see generally Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978) (holding that a municipality is liable where the challenged action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted"). There is no dispute that Officer Wilson relied on MPD General Order 702.03 to initiate his search. *See* ECF 35-1 (Defs.' Resp. to Pl.'s SUMF) ¶ 15 (conceding as undisputed that Officer Wilson "believed" that the General Order "authorized [him] to search everyone inside Ms. Whitehead's apartment."); *see also* ECF 32-5 (Ex. C to Pl.'s MSJ, Wilson Depo. Tr.) 21:7–22:8 (testifying MPD General Order 702.03 authorized the search of Mr. Mwimanzi because the object of the warrant could be "be contained on someone's body, so everybody is subject to search that's inside the residence at the time"); ECF 35-1 (Defs.' Statement of Undisputed Facts Which Preclude Partial Summary Judgment to Mwimanzi) ¶ 14 (stating that Wilson "relied on" the General Order to initiate his search). Thus, because that General Order qualifies as a municipal policy, the District can be liable under *Monell* for Officer Wilson's initiation of the search.

Furthermore, the District is wrong to divorce D.C. Code § 23-524(g) from Officer Wilson's search. In their sworn answers to Plaintiff's interrogatories, both Officer Wilson and the District expressly stated that the General Order *and* D.C. Code § 23-524(g) "justified" the search of Mr. Mwimanzi. ECF 24-5, (Ex. D to Pl.'s Mot. To Amend, Def. District of Columbia's Resp. to Pl.'s Interrogs.) 3–4 ("[T]he search conducted by Officer Wilson of Mr. Mwimanzi was justified under Metropolitan Police Department General Order 702.03 (DC Code Title 23 § 23-524)."); ECF 32-

7, (Ex. E to Pl.'s MSJ, Def. Wilson Resp. to Pl.'s Interrogs.) 3 ("[T]he search I conducted was justified under Metropolitan Police Department General Order 702.03 (DC Code Title 23 § 23-524)."). These concessions show that D.C. Code § 23-524(g) also gave rise to the search and therefore provides an additional basis for municipal liability.

Because Mr. Mwimanzi has identified an explicit policy that violates the Constitution and has shown that the policy was the moving force behind his injury, he has established municipal liability for purposes of 42 U.S.C. § 1983. *See Baker*, 326 F.3d at 1306. The District's argument that Mr. Mwimanzi has not demonstrated municipal liability under other, independent theories—such as the action of a final policymaker, inaction arising from deliberate indifference, or a practice so common that it constitutes a "custom," ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 23–24—is irrelevant. Establishing one theory of municipal liability is enough.

### III.    D.C. Code § 23-524(g) and the Parallel General Order Are Facially Unconstitutional Insofar as They Permit Officers To Search Persons Based Solely on Their Presence in a Residence Subject to a Search Warrant for Items Concealable on a Person.

The parties agree that Mr. Mwimanzi's facial challenge is governed by the standard set out in *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), and therefore the analysis must focus on the "searches that the law actually authorizes, not those for which it is irrelevant." *Id.* at 418; ECF 32 (Pl.'s MSJ) at 12; ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 18. A search is "irrelevant" if it is authorized by a warrant or an exception to the warrant requirement (such as exigency or consent) because these types of searches are permitted by the Constitution and therefore may "proceed irrespective of whether [they] [are] authorized by the [challenged] statute" as well. *Patel*, 576 U.S. at 418–19. The searches that matter to the facial challenge are only the "actual applications" of the contested provision; that is, the ones for which that provision does "work." *Id.* at 419. The sole class of searches that Mr. Mwimanzi contends D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) authorize in excess of what the Fourth Amendment allows are searches based

exclusively on an individual's presence in a residence subject to a search warrant that enumerates items concealable on a person. Mr. Mwimanzi's facial challenge therefore turns on whether these provisions indeed authorize such searches and, if so, whether the Fourth Amendment precludes them. The answer to both questions is yes.

### A. D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) Permit Searches of People Based Solely on Their Presence in Residences Subject to Warrants for Things That May Be Concealed Upon A Person.

D.C. Code § 23-524(g) states in relevant part that "[a]n officer executing a warrant directing a search of premises or a vehicle may search any person therein . . . to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person." MPD General Order 702.03(VII)(F)(8)(f) adopts an essentially identical rule: "Members may search any person on the premises to the extent reasonably necessary to ensure safety and/or find contraband or property enumerated in the search warrant."[3]

In *United States v. Miller*, 298 A.2d 34 (D.C. 1972), the D.C. Court of Appeals recognized that § 23-524(g) authorizes precisely the type of searches challenged here. Quoting with approval a law review article that analyzed the provision, the court stated:

> There are obviously reasonable limitations on th[e] authority [conferred by D.C. Code § 23-524(g)]. A police officer could not under this provision search persons to locate a stolen television which was enumerated in the search warrant. However, *an officer could under this provision search persons to locate narcotics* which were enumerated in the search warrant and which could be secreted on a person.

---

[3] Section VII(F)(8) of MPD General Order 702.03 contains several rules for searches of people in places subject to a warrant. Mr. Mwimanzi has challenged only § VII(F)(8)(f), *see* ECF 24-2 (Ex. A to Pl.'s Mot. to Amend, Proposed Amended Compl.), Prayer for Relief ¶ (b), because that rule is the one Officer Wilson relied on here. *See* ECF 32-5 (Ex. C to Pl.'s MSJ, Wilson Dep. Tr.) 21:7-22:8 (testifying MPD General Order 702.03 authorized the search of Mr. Mwimanzi because the object of the warrant could be "be contained on someone's body, so everybody is subject to search that's inside the residence at the time"). The District has not argued that any other provisions of § VII(F)(8), or MPD General Order 702.03 more broadly, bear on this case.

*Id.* at 36 n.6 (quoting Rauh and Silbert, *Criminal Law and Procedure: D.C. Court Reform and Criminal Procedure Act of 1970*, 20 Am. U. L. Rev. 252, 262-63 (1970)) (emphasis added). D.C. Code § 23-524(g) "is an Act of Congress applicable exclusively to the District of Columbia," and in such circumstances, the D.C. Circuit's "policy has been to defer to the District of Columbia Court of Appeals on questions of statutory interpretation." *United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991).[4] Under the authoritative interpretation here, D.C. Code § 23-524(g) provides that when officers have a warrant to search a place for an item, they are authorized to search any individual in the place for that item—so long as the item can be hidden on the individual's person. The General Order provision, which the District concedes contains only "minor differences in wording," ECF 26 (Def.'s Opp'n. to Pl.'s Mot. to Amend) at 5, necessarily means the same thing.

The D.C. Court of Appeals' interpretation flows naturally from the text. The first clauses of both D.C. Code § 23-524(g) ("[a]n officer executing a warrant directing a search of premises or a vehicle may search any person therein") and MPD General Order 702.03(VII)(F)(8)(f) ("[m]embers may search any person on the premises") authorize searches of any person in a place subject to a warrant. The second clause of each provision constrains that authority by permitting officers to search people only "to the extent reasonably necessary" to find items enumerated in the

---

[4] While the Supreme Court has noted that "the customary deference to the District of Columbia Court of Appeals' construction of local federal legislation" is not without limit, *Whalen v. United States*, 445 U.S. 684, 688 (1980), undersigned counsel knows of only one case where the D.C. Circuit refused to defer to the D.C. Court of Appeals' construction of a D.C. Code provision, and that case involved an interpretation of the Home Rule Act, which implicated "exclusively federal" interests, *Bliley v. Kelly*, 23 F.3d 507, 511 (D.C. Cir. 1994). Departures from the D.C. Court of Appeals' interpretations of D.C. law are permissible only in cases of "egregious error," *United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991) (citing *Whalen*, 445 U.S. at 687–689, and *Pernell v. Southall Realty*, 416 U.S. 363, 368–69, (1974)). The District has not shown (or even claimed) such error here. Indeed, the D.C. Circuit has questioned whether any court below the Supreme Court can refuse to defer at all. *See Hall v. C & P Telephone Co.*, 793 F.2d 1354, 1358 n.9. (D.C. Cir. 1986). Accordingly, this Court must accept the District of Columbia Court of Appeals' construction of D.C. Code § 23-524(g).

warrant. Thus, when the warrant lists items that are capable of concealment on a person, the "reasonably necessary" clause permits officers to search people in a manner calibrated to finding the named items. But when the warrant enumerates items that cannot be concealed on an individual's person (such as television sets), no search of a person is reasonably necessary, and so officers cannot search a person for the named items.

The District repeats its argument that the code provision contains a "'reasonableness' requirement [that] perfectly tracks the requirements of the Fourth Amendment," ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 19; however, the District does not grapple with the D.C. Court of Appeals' contrary reading. The District's sole support for its argument is the appearance of the word "reasonably" in the text. *Id.* Yet neither D.C. Code § 23-524(g) nor MPD General Order 702.03(VII)(F)(8)(f) forbids "unreasonable searches and seizures," as the Fourth Amendment does. Instead, the provisions authorize searches based on presence alone, while limiting the "extent," or scope of such searches to that "reasonably necessary to find property enumerated in the warrant which may be concealed upon the person." D.C. Code § 23-524(g); *accord* MPD General Order 702.03(VII)(F)(8)(f). Thus, far from imposing a freestanding reasonableness requirement, this limitation bars officers only from conducting searches for objects that cannot physically fit into the place searched (such as televisions in coat pockets), as the D.C. Court of Appeals explained in *Miller*. The Fourth Amendment's "reasonableness" requirement means a good deal more, including (as described in the next section) the *Ybarra* prohibition on searching a person based on mere presence in a location for which officers have a warrant.

Perhaps sensing the weakness in its interpretation, the District attempts to obscure the dictates of D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) by claiming that searches of people present in a location subject to a warrant are permitted only if the search is

reasonable "under the totality of the circumstances" and as "properly justified by the circumstances as outlined in the warrant and on the scene."  ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 22. But as the D.C. Court of Appeals made clear in *Miller*, D.C. Code § 23-524(g) is not concerned with the "totality of the circumstances" and the "circumstances on the scene." Rather, it has just two requirements for the search of a person: (1) presence on premises and (2) capability of concealing an object listed in the warrant. By tracking the statutory language in General Order 702.03(VII)(F)(8)(f), MPD made clear that it has the same meaning.

This authoritative construction by the D.C. Court of Appeals is reflected in the common understanding of the relevant provisions by the police officers who rely on them every day. *See* ECF 32-5 (Ex. C to Pl.'s MSJ, Wilson Depo. Tr.) 39:4–11 (Officer Wilson testifying that he searched Mr. Mwimanzi "[b]ecause he was inside the residence where there was believed to be drugs and drug paraphernalia . . . [a]nd there was a warrant signed by a judge to search or to seize any drugs in that location"); *see id*. at 21:4–25 ("702.03 . . . that's the MP [sic] general orders on search warrants, it states that . . . in a private residence, everybody can be searched as long as . . . what's contained in the search warrant can be contained on their body"); ECF 27-1 (Defs.' Statement of Undisputed Material Facts) ¶ 19 ("Officer Wilson believed the search was appropriate because what was contained in the search warrant could be on Mwimanzi's body.").

In sum, both D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) authorize searches based exclusively on an individual's presence in a residence subject to a search warrant for items a person could conceal on themselves—and that is the category of searches that Mr. Mwimanzi challenges as prohibited under the Fourth Amendment.

**B. The Fourth Amendment Prohibits Searches of People Based Solely on Their Presence in a Residence Subject to a Search Warrant for Items Concealable on Their Person.**

The Fourth Amendment permits searches of individuals only if the police possess a warrant to search the individuals, or an exception to the warrant requirement applies. *See Missouri v. McNeely*, 569 U.S. 141, 148 (2013). A search predicated exclusively on an individual's presence in a residence subject to a warrant for objects concealable on their person satisfies neither of these conditions.

**1.** A warrant naming or describing only a place confers "no authority whatever to invade the constitutional protections possessed individually" by persons found inside who are not named or specifically described in the warrant. *Ybarra v. Illinois*, 444 U.S. 85, 92 (1979). Fundamentally, this is so because people are "clothed with constitutional protection[s] against an unreasonable search or an unreasonable seizure[] [t]hat . . . [are] separate and distinct from" those enjoyed by the owner of the property where they may be located. *Id.* at 91–92. These protections distinguish individuals on the premises from containers found on the premises: Officers with a valid warrant can search containers as long as they might store the object of the search, *United States v. Ross,* 456 U.S. 798, 820 (1982), but applying the same rule to human beings would ignore the "unique, significantly heightened protection afforded against searches of one's person," as opposed to one's property, *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999), and distort the basic principle that the "Fourth Amendment protects people, not places," *Katz v. United States*, 389 U.S. 347, 351 (1967).

To authorize the search of a person, a warrant must be backed by probable cause "particularized with respect" to the individual searched. *Id.* at 92; *see also Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972) (stating that the warrant requirement serves to provide an "independent assurance" that "probable cause exists for the requested search or seizure"). A warrant that only names or describes a place does not meet this standard, as it is supported by only a finding that "there exists probable cause to search the premises where the person may happen to

be." *Ybarra*, 444 U.S. at 92. Additionally, valid warrants must "particularly describe" their targets. U.S. Const. amend. IV. A warrant naming only a place that implicitly permits searches of wholly unidentified people clashes with this requirement, and approaches the "'open-ended' or 'general' warrants [that] are constitutionally prohibited," *Ybarra*, 444 U.S. at 92 n.4.

The District repeats its assertion that *Ybarra*'s limits on the scope of warrants for public places does not apply to warrants for private dwellings even though the reasoning discussed above has equal force in both settings and the D.C. Circuit and other courts have endorsed a rule for residences similar to *Ybarra*'s. In *United States v. Branch*, 545 F.2d 177, 181 (D.C. Cir. 1976), the D.C. Circuit held that a warrant to search an apartment did not authorize the search of a visitor's bag—much less the visitor himself—when he entered the apartment while the search of the apartment was underway. *Id.* at 181–82. The District again attempts to tie the court's holding to the defendant's absence when the apartment search began, ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 21; yet the court emphasized that fact to show only that the searched individual was a "mere visitor" and not a resident, and in no way suggested that warrants to search residences encompass everyone found inside when the search begins, *Branch*, 545 U.S. at 182.

Likewise in *United States v. Reid*, 997 F.2d 1576, 1579 (D.C. Cir. 1993), the D.C. Circuit held that, even when combined with an officer's testimony that he felt endangered, a person's presence near a residence subject to a search warrant barely established *reasonable suspicion* to justify a *frisk*. The District still has no answer for how presence near a residence can, on its own, establish the higher standard of probable cause necessary to conduct a full search. Nor does the District have a persuasive response to *White v. United States*, 512 A.2d 283, 286 (D.C. 1986), as the District again focuses on the court's decision to remand while ignoring the court's express holding that the trial judge erred in concluding that an individual's presence in a "private home"

subject to a warrant allowed officers to search him. Indeed, the court directed the trial court on remand to determine whether something besides presence—flight, particularly—may have justified the search. *Id.* As to the Third and Tenth Circuit cases endorsing similar propositions, *Doe v. Groody*, 361 F.3d 232, 243, 244 (3d Cir. 2004); *United States v. Ward*, 682 F.2d 876, 880 (10th Cir. 1982); *see* ECF 32 (Pl.'s MSJ) at 17 (discussing the cases), the District says nothing at all, *see generally* ECF 35 (Defs.' Opp'n. to Pl.'s MSJ).

The District also errs in repeating its emphasis on the Supreme Court's statement in *Ybarra* that "a warrant to search a place cannot normally be construed to authorize a search of each individual in that place," 444 U.S. at 92 n.4, and the D.C. Circuit's dicta based on that passage that, "[t]he Court thus held open the possibility that mere presence in some public places could suggest involvement in criminal activity if criminal activity pervaded the public place," *United States v. Holder*, 990 F.2d 1327, 1329 n.2 (D.C. Cir. 1993). *See* ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 19, 20. In the context of these statements, the only exception either the Supreme Court or D.C. Circuit identified involved "situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Ybarra*, 444 U.S. at 92 n.4. Mr. Mwimanzi challenges searches of people based on warrants *only* to search places; a warrant expressly authorizing searches of people presents an entirely different case.

The District also errs in relying on *Walker v. United States*, 327 F.2d 597 (D.C. Cir. 1963), which did not, as the District asserts, involve "the search of an individual," *see* ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 20–21, but rather upheld the search of property out in the open—specifically, a wallet and bag that two individuals passed between each other when an officer arrived with a warrant to search their home. 327 F.2d at 600. The officer did not search the

individuals, nor did the court suggest that he could have done so. *See id.* To the contrary, it viewed the wallet and bag as being, for all intents and purposes, "on a table or on the floor in the apartment," *id.*, and it assured that its holding did *not* "say that the authority conferred by a warrant to search premises is coterminous with that residing in a warrant to search the person." *Id.*

    **2.** Because a warrant to search a place does not authorize a search of the people found inside, a person's presence in a such a location can justify a search only if such presence, on its own, triggers an exception to the warrant requirement. The District has not argued that it does. In any case, such an argument could not prevail. Presence alone does not constitute an exception to the warrant requirement. The Supreme Court rejected that possibility in *Ybarra*, when it declined the government's invitation to hold that police can search individuals based on their presence on "compact premises" subject to warrants as long as "the police have a reasonable belief that such persons are connected with drug trafficking and may be concealing or carrying away the contraband." 444 U.S. at 94–96 (internal quotation marks and citation omitted).

    Nor does presence alone automatically trigger one of the "few specifically established and well delineated exceptions" to the warrant requirement. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). These exceptions all either require special circumstances that obviously do not materialize based on mere presence (e.g., plain feel, consent, or an arrest), or they include a requirement of probable cause to believe the search will uncover evidence or contraband, *see e.g.*, *United States v. Dawkins*, 17 F.3d 399, 403, 405 (D.C. Cir. 1994), *amended*, 327 F.3d 1198 (D.C. Cir. 1994) (observing that warrantless home search is permissible based on exigent circumstances and probable cause); *United States v. Capelton*, 350 F.3d 231, 240 (1st Cir. 2003) (applying same rule to searches of people). Presence alone does not establish probable cause to believe a person possesses evidence or contraband. *See Branch*, 545 F.2d at 186; *Reid*, 997 F.2d at 1579; *White,*

512 A.2d at 286; *Groody*, 361 F.3d at 243; *Ward*, 682 F.2d at 880. Thus, exceptions for which probable cause is prerequisite cannot be satisfied by mere presence. Accordingly, where a warrant has not specifically authorized the searches of people found in the place to be searched, a person's mere presence there cannot, by itself, fill the gap in officers' constitutional authority to search them.

For this reason, the decisions on which the District relies are all inapposite. As discussed in Mr. Mwimanzi's motion for summary judgment, the searches (and arrests) in *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993), *Washington v. District of Columbia*, 685 F. Supp. 264, 276 (D.D.C. 1988), and *United States v. Miller*, 298 A.2d 34, 36 (D.C. 1972), were justified not because of the individual's presence alone, but due to other factors in tandem with that consideration. *See* ECF 32 (Pl.'s MSJ) 18–20. The District's reliance on *Thomas v. United States*, 352 A.2d 390 (D.C. 1976), is misplaced for the same reason, as there, the court upheld a search and arrest not only because the defendant was on a premise subject to a search warrant, but also because the defendant "met the informant's description of one of the sellers of narcotics." *Id.* at 391, 392.

The District asserts that since *Ybarra*, courts "drew back somewhat from the requirement that there be suspicion 'directed at the person,'" ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 19–20 (quoting *Germany v. United States*, 984 A.2d 1217, 1224 (D.C. 2009)), but the cases it (and *Germany*) cites for this proposition all involve either frisks, *Germany*, 984 A.2d at 1229–30, or detentions, *Michigan v. Summers*, 452 U.S. 692, 694 (1981), *Muehler v. Mena*, 544 U.S. 93, 102 (2005), and *Los Angeles Cty. v. Rettele*, 550 U.S. 609, 615 (2007), that allowed officers to protect their safety. None involve searches of persons for evidence.

Officers cannot search people unless they possess a warrant permitting the search or an exception to the warrant requirement applies. Because D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) authorize searches based solely on an individual's presence in a residence subject to a warrant for concealable items, and because that fact alone satisfies neither condition, these provisions permit unlawful searches and are facially unconstitutional to that extent.

## IV.    D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) are Unconstitutional as Applied to Mr. Mwimanzi.

As discussed in Part II, *supra*, Officer Wilson relied on D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) when he searched Mr. Mwimanzi. Even if these provisions are not facially unconstitutional, their application here offends the Fourth Amendment because neither the warrant nor an exception to the warrant requirement authorized the search.

The warrant to search Ms. Whitehead's home did not encompass Mr. Mwimanzi. It made no reference to Mr. Mwimanzi, stating only that officers could search the "**Residence**" belonging to Ms. Whitehead. ECF 32-1 (Pl.'s SUMF) ¶¶ 9–11 (emphasis in the warrant). The District emphasizes that the affidavit noted that "multiple drug users and drug dealers" were, at times, present at that residence, ECF 35 at 25; however, the affidavit did not name or describe those individuals and therefore supplied no basis for concluding that Mr. Mwimanzi was one of them. More importantly, the *warrant* does not mention any individuals, let alone authorize the search of them, and the affidavit did not even seek such authority. ECF 32-1 (Pl.'s SUMF) ¶¶ 9–11; *see United States v. Gregg*, 833 F. Supp. 2d 535, 537, 539 (E.D. Va. 2011) (holding a warrant to search a residence for evidence related to drug possession did not authorize the search of an unnamed and unidentified individual found inside). Nor could the warrant authorize the search of Mr. Mwimanzi by implication; as discussed previously, a warrant to search a place confers "no authority whatever

18

to invade the constitutional protections possessed individually" by people found inside who are not named or specifically described in the warrant. *Ybarra*, 444 U.S. at 92.

Because the warrant did not permit the search of Mr. Mwimanzi, Officer Wilson could conduct the search only if an exception applied. The District, however, has not identified any recognized exception that could fit these circumstances. Indeed, the probable cause requirement, which not only undergirds several of the warrant exceptions but also the issuance of a warrant itself, was notably lacking. On this point, the District is simply wrong to assert that probable cause was met by the facts known to Officer Wilson—namely, (1) the possibility that Mr. Mwimanzi could conceal drugs on his body, (2) his presence in a private residence, as opposed to a public place, subject to a warrant; and (3) the allegations in the affidavit that multiple drug users and dealers operated on the premises. ECF 35 (Defs.' Opp'n. to Pl.'s MSJ) at 23–25. In *United States v. Branch*, 545 F.2d 177, 182, 186 (D.C. Cir. 1976), the D.C. Circuit not only held that officers lacked authority under a premises warrant to search a visitor's shoulder bag, but also that the officers could not justify their search of the bag under the search incident to arrest exception because the arrest that preceded the search was not supported by probable cause. The quantum of suspicion required to establish probable cause to arrest is identical to the standard for establishing probable cause to search. *See Dawkins*, 17 F.3d at 404. It is therefore noteworthy that the court held the standard unsatisfied even though, as here, the underlying warrant was for drugs which the defendant could have concealed on his person, and the officers had evidence that significant illegal drug activity occurred at the residence where the police made the arrest, *Branch*, 545 F.2d at 178, 179, 181. Indeed, the officer in *Branch* was equipped with far more facts to support probable cause than exist here, including:

> (1) [he received an] informant's tip that controlled substances would be found in the apartment [that] had been verified; (2) the informant had also indicated that a

shipment of narcotics was expected at the apartment that night; (3) [the officer] had intercepted a telephone call and engaged in [a] conversation [with a person saying he would come to the apartment that night]; (4) [the defendant] arrived within the time frame mentioned in the telephone call; (5) he was an adult male, as was the telephone caller; and (6) he was wearing a large shoulder bag, which was suitable for concealing narcotics.

*Branch*, 545 F.2d at 183.

That the court held probable cause lacking notwithstanding these facts leaves little doubt that Mr. Mwimanzi's presence in a residence suspected of facilitating drug transactions did not give Officer Wilson constitutional authority to search him.

The D.C. Court of Appeals' decision in *White v. United States*, 512 A.2d 283 (D.C. 1986), affirms this point. The District misleadingly quotes the court's statement that "the affidavit . . . indicated that a woman named 'Bunny' was selling heroin from the house, but it made no mention of anyone else," to suggest that, according to the affidavit, only one person associated with the targeted residence was engaged in illegal drug activities. ECF 35 at 25 (quoting *White*, 512 A.2d at 286 n.3). To the contrary, the *White* affidavit looked just like the one at issue here: It mentioned only one individual *by name*, but also stated that other, unspecified individuals used the residence for illegal drug activity. *Compare White*, 512 A.2d at 284 n.1 (quoting the affidavit as stating that an informant "witnessed at least five instances in the premises where the female known as Bunny sold small plastic packets containing white powder to individuals who came to the front door"), *with* ECF 35-1 (Defs.' Response to Pl.'s SUMF) ¶ 13 (admitting that "[o]ther than Margie Whitehead, who was identified as the leaseholder, the affidavit did not mention any individuals by name, nor did it provide a physical description of any other individuals"). Despite allegations that several unidentified individuals used the residence for drug transactions, the court in *White* held that the defendant's presence at the residence did not supply probable cause to support a search of his person. *See* 512 A.2d at 286. That holding supports the same conclusion here.

Warrants to search places do not automatically authorize searches of people found there who are not specified in the warrant. D.C. Code § 23-524(g) and MPD General Order 702.03(VII)(F)(8)(f) authorize such searches, and to that extent, they are facially unconstitutional. Based on the undisputed facts, the application of these provisions to Mr. Mwimanzi was unconstitutional as well.

## CONCLUSION

The Court should grant Mr. Mwimanzi summary judgment as to liability on Claim I of his Amended Complaint.

Date: November 24, 2021

Respectfully submitted,
*/s/ Michael Perloff*
Michael Perloff (D.C. Bar No. 1601047)
Tara Patel (D.C. Bar No. 1616930)
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
mperloff@acludc.org

*Counsel for Plaintiff*